**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**

504 Tavern LLC, et al.,                    )
                                           )
                    Plaintiffs,            )     Case No.  4:14-cv-115
                                           )
v.                                         )
                                           )
Vitti, et al.,                             )
                                           )
                    Defendants.            )

**SUGGESTIONS IN SUPPORT OF DEFENDANT PHILIPP VITTI'S**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................1

II.   THE PARTIES LACK COMPLETE DIVERSITY .............................................3

    A.    Applicable Law to Determine Domicile.......................................................3

          1.    Presumption Against Diversity and Newly Acquired
              Domiciles ...................................................................................3

          2.    Plaintiffs Bear the Factual Burden to Prove Vitti is Not a
              Citizen of Missouri ...................................................................5

          3.    Factors to Consider in Determining Vitti's Domicile...................5

    B.    Vitti is Domiciled in Missouri Because He Has Not Established A
        New State of Citizenship .........................................................................6

III.  THE AMENDED COMPLAINT FAILS TO RAISE A FEDERAL
    QUESTION BECAUSE both THE RICO and fcra claims MUST BE
    DISMISSED....................................................................................................9

    A.    Applicable Law for Motion to Dismiss for Failure to State a Claim.......10

    B.    Accepting All of Plaintiffs' Allegations as True, the Amended
        Complaint Fails to State a RICO Claim .................................................10

          1.    Pleading Requirements for RICO Claims..................................12

              a.    Plaintiffs Failed to Plead a RICO Enterprise..................13

              b.    Plaintiffs Failed to Plead a Pattern of Racketeering ........14

    C.    Accepting All of Plaintiffs' Allegations as True, the Amended
         Complaint Fails to State a FCRA Claim ................................................17

    D.    The Court Should Dismiss the Remaining State Law Claims for
        Lack of Jurisdiction...............................................................................19

IV.   CONCLUSION ...........................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altimore v. Mount Mercy Coll.*,
  420 F.3d 763 (8th Cir. 2005)...................................................................................... 6, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 10, 11

*Beck v. Prupis*,
  529 U.S. 494 (2000) ......................................................................................................... 15

*Bell v. Hood*,
  327 U.S. 678 (1946) ........................................................................................................... 3

*Blakemore v. Missouri Pac. R. Co.*,
  789 F.2d 616 (8th Cir. 1986)......................................................................................... 4, 5, 8

*Citizens Bank of Batesville, Arkansas v. Collins*,
  No. 4:06CV00322 GH, 2007 WL 604701 (E.D. Ark. Feb. 21, 2007) ..................... 6, 9

*City of Indianapolis v. Chase Nat'l Bank*,
  314 U.S. 63 (1941) ............................................................................................................. 4

*Cooney v. Usher*,
  No. 4:12-CV-38-JAR, 2012 WL 484697 (E.D. Mo. Feb. 14, 2012)................ 4, 5, 6, 8

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
  528 F.3d 1001 (8th Cir. 2008)........................................................................................ 12, 14

*Crest Const. II, Inc. v. Doe*,
  660 F.3d 346 (8th Cir. 2011)..................................................................................... 11, 12, 13

*Freeport-McMoran, Inc. v. K.N. Energy, Inc.*,
  498 U.S. 426 (1991) ........................................................................................................... 4

*Glorvigen v. Cirrus Design Corp.*,
  581 F.3d 737 (8th Cir. 2009)......................................................................................... 19, 20

*Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*,
  757 F. Supp. 2d 904 (W.D. Mo. 2010) ...................................................................... 14

*Handeen v. Lemaire*,
  112 F.3d 1339 (8th Cir. 1997)....................................................................................... 13

*Holmes v. Sopuch*,
    639 F.2d 431 (8th Cir. 1981).............................................................................. 4, 8, 9

*Hurocy v. Direct Merchants Credit Card Bank, N.A.*,
    371 F. Supp. 2d 1058 (E.D. Mo. 2005) .................................................................. 18

*Janzen v. Goos*,
    302 F.2d 421 (8th Cir. 1962).......................................................................... 4, 5, 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................................. 3

*Lawhorn v. Trans Union Credit Info. Corp.*,
    515 F. Supp. 19 (E.D. Mo. 1981) ........................................................................... 19

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977)...................................................................................... 5

*Myers v. Richland County*,
    429 F.3d 740 (8th Cir. 2005).................................................................................... 3

*Nitro Distrib., Inc. v. Alticor, Inc.*,
    565 F.3d 417 (8th Cir. 2009).................................................................................. 11

*Owen Equipment & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) ................................................................................................. 4

*Prater v. Ball*,
    No. 12-CV-3493-S-DGK, 2013 WL 1755549 (W.D. Mo. Apr. 24, 2013) .................. 9

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ................................................................................................. 17

*Salveson v. Miller*,
    489 F. Supp. 2d 963 (D.S.D. 2007) ...................................................................... 6, 9

*Sheehan v. Gustafson*,
    967 F.2d 1214 (8th Cir. 1992).......................................................................... 3, 6, 9

*Stephens, Inc. v. Geldermann, Inc.*,
    962 F.2d 808 (8th Cir. 1992).................................................................................. 13

*Summerhill v. Terminix, Inc.*,
    637 F.3d 877 (8th Cir. 2011).................................................................................. 13

*Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*,
    934 F.2d 976 (8th Cir. 1991)...................................................................... 14, 15, 16

*Trans World Airlines, Inc. v. Berger*,
  864 F. Supp. 106 (E.D. Mo. 1994) .................................................................. 15, 16

*United States v. Lee*,
  374 F.3d 637 (8th Cir. 2004).......................................................................... 13, 14

*United States v. Turkette*,
  452 U.S. 576 (1981) ............................................................................................. 13

*Wisdom v. First Midwest Bank of Poplar Bluff*,
  167 F.3d 402 (8th Cir. 1999).......................................................................... 14, 15

*Yeldell v. Tutt*,
  913 F.2d 533 (8th Cir. 1990).............................................................................. 4, 8

*Zotta v. NationsCredit Fin. Servs. Corp.*,
  297 F. Supp. 2d 1196 (E.D. Mo. 2003) ............................................................... 18

## Statutes

18 U.S.C.A. § 1343 ................................................................................................ 15

15 U.S.C § 1681(b)(f).................................................................................... 18, 19

18 U.S.C. § 1961(1) .................................................................................. 13, 14, 15

18 U.S.C. § 1962(c)............................................................................................... 11

28 U.S.C. § 1331 ................................................................................................ 3, 9

28 U.S.C. Sections 1331 and 1332.................................................................. 1, 3, 9

28 U.S.C. § 1332(a)................................................................................................. 3

Fair Credit Reporting Act, 15 U.S.C § 1681 .......................................... .......... 2, 17

FCRA. 15 U.S.C.A. § 1681(b)............................................................................... 18

RSMo §570.223 ....................................................................................................... 1

## Other Authorities

Fed.R.Civ.P. 12 .................................................................................................. 1, 5

Rule 9(b) .......................................................................................................... 13, 17

Rule 11(c)(2) ......................................................................................................... 10

Rule 12 ............................................................................................................... 9, 10

Defendant Philipp Vitti ("Vitti") respectfully submits these Suggestions in Support of his Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Complete diversity does not exist in that Vitti is a citizen of the same state as one of the Plaintiffs. Additionally, the Amended Complaint presents no federal question because Count VIII for "Civil Conspiracy RICO Violation" and Count IX for "Violation of the Fair Credit Reporting Act" fail to state a claim upon which relief can be granted. Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 28 U.S.C. Sections 1331 and 1332.

## I.    INTRODUCTION

Plaintiffs filed a nine-count Amended Complaint against defendants Philipp Vitti, Robert Sippio, Jr. and BEPEC, LLC asserting claims for breach of contract, conversion, fraud, violation of RSMo §570.223 (identity theft), negligence, breach of fiduciary duty, unjust enrichment, civil conspiracy RICO violation, and the Fair Credit Reporting Act. Plaintiffs claim that Vitti is a former independent contractor of the Plaintiff 504 Tavern LLC, which operates as the Westport bar "Gusto." Doc. 10, at ¶ 1. They claim this lawsuit is pursued "in order to redress the gross mismanagement, fraud, and identity theft committed against the Plaintiffs." *Id.* Vitti disputes these allegations and, moreover, has asserted claims against Plaintiffs in the Jackson County, Missouri Circuit Court, in Case No. 1416-CV04955, *Philipp Vitti v. 504 Tavern, LLC d/b/a Gusto; 504 Westport, LLC, Shawn Nelson; David Saxton; Donald Saxton; and  Sergio Acosta* (the "State Court

Case").[1] Vitti seeks to recover in the State Court Case damages caused to him when Plaintiffs tortiously forced him out of his business.

There is no jurisdictional basis for the parties' dispute to be heard in Federal Court, as the parties lack complete diversity and there is no valid federal-question claim. In their Amended Complaint, Plaintiffs allege that Plaintiff Shawn Nelson is a Kansas citizen. Doc. 10, at ¶ 5. Plaintiffs allege that Plaintiff 504 Tavern LLC is organized under the laws of Missouri and located in Jackson County. Doc. 10, at ¶ 6. Plaintiffs further allege that all defendants are all citizens of Florida (Doc. 10, at ¶¶ 7-9), and that the amount in controversy is greater than $75,000. Doc. 10, at ¶ 10. Additionally, Count VIII of the Amended Complaint asserts a claim for "Civil Conspiracy RICO Violation" and Count IX asserts a claim under the Fair Credit Reporting Act, 15 U.S.C § 1681. On its face, the Amended Complaint attempts to establish subject matter jurisdiction in that there is alleged complete diversity between the Plaintiffs and all Defendants, the amount in controversy is sufficient, and it references two claims under federal law.

However, Plaintiffs are incorrect that Vitti is a citizen of Florida. In fact, Vitti is domiciled in Missouri, along with Plaintiff 504 Tavern LLC, thereby destroying complete diversity. Plaintiffs also lack a good faith basis for their RICO and FCRA claims. Even if the factual allegations (nearly all of which were added in response to Vitti's first Motion to Dismiss) are assumed true for the purposes of this Motion, Plaintiffs *still* do not come close to stating a cognizable RICO claim. Moreover, Plaintiffs' claim under the Fair Credit Reporting Act ("FCRA")—a federal statute intended to protect consumers against errors made by credit reporting agencies—is completely inapplicable to the

---

[1] The State Court Petition is attached hereto as **Exhibit A.**

factual allegations of this case. Significantly, Plaintiffs only filed this suit in Federal Court when, during attempted settlement negotiations between Vitti and Plaintiffs, Vitti indicated that he was prepared to pursue his claims against Plaintiffs in Jackson County. The Court should dismiss Plaintiffs' Amended Complaint. The parties' dispute will be resolved in the State Court Case, where the action belongs, because there is no complete diversity of citizenship and Plaintiffs failed to state a claim upon which relief can be granted with regard to their counts under federal law.

## II.      THE PARTIES LACK COMPLETE DIVERSITY

### A.      Applicable Law to Determine Domicile

"'Federal courts are courts of limited jurisdiction.'" *Myers v. Richland County,* 429 F.3d 740, 745 (8th Cir. 2005) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). The basic statutory grants of federal court subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "federal-question" jurisdiction and is properly invoked when the plaintiff pleads a colorable claim "arising under" the Constitution or laws of the United States. *See Bell v. Hood,* 327 U.S. 678, 681-85 (1946). Section 1332 provides for "diversity of citizenship" jurisdiction and is properly invoked when the plaintiff presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *See* 28 U.S.C. § 1332(a).

#### 1.      Presumption Against Diversity and Newly Acquired Domiciles

The Eighth Circuit has recognized that "Section 1332(a) must be strictly construed, in view 'of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts.'" *Sheehan v. Gustafson,* 967 F.2d 1214, 1215 (8th Cir.

21620358v1

1992) (*quoting City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 76 (1941). In order for diversity jurisdiction to exist, complete diversity is required. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978) ("diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff") (emphasis in original).

Diversity of citizenship must be established as of the time of the filing of the suit. *Freeport-McMoran, Inc. v. K.N. Energy, Inc.,* 498 U.S. 426, 428 (1991). "For purposes of diversity jurisdiction, the terms 'domicile' and 'citizenship' are synonymous. To establish domicile, an individual must both be physically present in the state and have the intent to make his home there indefinitely." *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990) (internal citations omitted); *Blakemore v. Missouri Pac. R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986); *Holmes v. Sopuch*, 639 F.2d 431, 434 (8th Cir. 1981) (holding that to establish domicile, a person must intend to reside in the state indefinitely "with no present or fixed intent to move on upon the happening of a reasonably certain event").

"Once acquired, a person's domicile persists until a new one is acquired; it is presumed to continue until it is shown to have changed." *Holmes*, 639 F.2d at 434 (citing *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962)). "There is a presumption favoring the continuation of an established domicile . . . and against an allegedly newly acquired one." *Cooney v. Usher*, No. 4:12-CV-38-JAR, 2012 WL 484697, at *2 n. 2 (E.D. Mo. Feb. 14, 2012) (citing *Blakemore v. Mo.Pac.R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986)). Therefore, by these standards, a person is considered a citizen of a state in which he no longer lives when the person has yet to establish a new domicile by indicating an intent to remain in the new state indefinitely. *See Holmes*, 639 F.2d at 434 ("Although Holmes'

4

testimony revealed that he had no specific intent to return to Missouri when he completed his studies at Ohio State, it is clear he had no intent to remain in Ohio beyond the educational period. . . . Holmes did not establish a new domicile in Ohio because he intended to remain there not for an indefinite period but only for as long as his studies required.").

### 2. Plaintiffs Bear the Factual Burden to Prove Vitti is Not a Citizen of Missouri

"[I]f a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." *Janzen v. Goos*, 302 F.2d 421, 424 (8th Cir. 1962). The determination of citizenship for purposes of diversity jurisdiction is a mixed question of law and fact, but mostly fact. *Blakemore*, 789 F.2d at 618. Determination of a motion to dismiss for lack of subject matter jurisdiction is not confined to the pleadings. *See* Fed.R.Civ.P. 12(d); *see also Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977) (recognizing that a court may consider extrinsic materials without converting the motion to one for summary judgment). In fact, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

### 3. Factors to Consider in Determining Vitti's Domicile

In *Cooney v. Usher*, the district court identified some factors commonly considered in determining a domicile for diversity jurisdiction purposes:

> Factors frequently taken into account include the party's current residence, voter registration and voting practices, location of real and personal property, location of brokerage and bank accounts, membership in unions, fraternal organizations, churches, clubs, and other associations, place of employment or business, driver's license and automobile registration, and payment of taxes. **No single factor is conclusive.**

*See* 2012 WL 484697, at *2 (internal citation omitted, emphasis added); *see also Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 769 (8th Cir. 2005) (considering state where party seeks medical treatment as indicative of domicile); *Sheehan v. Gustafson*, 967 F.2d 1214, 1216 (8th Cir. 1992) (considering location of bank accounts, property, use of address for official records, messages, and other mail, location of physician, dentist, and attorney). Although driver's license and car registration are factors to consider, these factors are not dispositive. *See Salveson v. Miller,* 489 F. Supp. 2d 963 (D.S.D. 2007) (Party with temporary employment in South Dakota was a citizen of Kentucky, rather than South Dakota, even though he possessed a South Dakota driver's license and mailing address in South Dakota); and *Citizens Bank of Batesville, Arkansas v. Collins*, No. 4:06CV00322 GH, 2007 WL 604701 (E.D. Ark. Feb. 21, 2007) (Party was an Arkansas citizen even though she registered to vote in Texas and had a Texas driver's license).

**B.    Vitti is Domiciled in Missouri Because He Has Not Established A New State of Citizenship**

Plaintiffs' statements alleging diversity jurisdiction are incorrect. On the date suit commenced, February 6, 2014, Vitti had a Missouri domicile. Plaintiffs' Amended Complaint implicitly recognizes this fact, stating that "Vitti stays occasionally with his mother in Jackson County, Missouri," or "in Connecticut with his grandmother," but falsely claims that "Vitti's residence and domicile is in Florida." *See* Doc. 10, at ¶ 7. In reality, Vitti is a Missouri resident who was only in Florida for temporary employment; he left there in 2013. *See* Declaration of Philipp Vitti, attached as **Exhibit B**, ("Declaration"), at ¶ 14. Beginning in 2012, Vitti began working temporary jobs in the service industry, first in Florida and now in Connecticut. *Id.* at ¶ 8. Throughout this

21620358v1

time, because of the nature of his employment, he has maintained his Missouri residence. *Id.* at ¶ 9.

Vitti's permanent residence is located at 3640 Campbell Street, Kansas City, Missouri 64109 (the "Missouri residence"). *Id.* at ¶ 3. Vitti's Missouri residence is a house owned by his mother. *Id.* at ¶ 4. Vitti is unmarried and does not have children; his mother is his next of kin. *Id.* at ¶ 5. Nearly all of Vitti's personal property is located at his Missouri residence, except for his clothing and computer. *Id.* at ¶ 6. He is registered to vote in Missouri. *Id.* at ¶ 7. Many years ago Vitti set up a Bank of America account in Kansas City, Missouri, and has updated his contact information with each move. *Id.* at ¶ 17. He had a Missouri driver's license until January 2014. *Id.* at ¶ 18. However, after difficulty getting the vehicle insured, Vitti was required to register the vehicle in Connecticut and apply for a Connecticut driver's license. *Id.* at ¶ 18.

Vitti receives nearly all of his official mail and records at the Missouri residence. *Id.* at ¶ 9. For example, mailings such as his phone and data plan bills, eye doctor appointment notifications, heart and thoracic doctor appointment notifications, alumni newsletters and other school communications, are sent to his Missouri residence. *Id.* at ¶ 9. The Missouri Department of Revenue sends official mail to his Missouri residence relating to Missouri businesses in which he has an ownership interest. *Id.* at ¶ 10. Additionally, friends and family send birthday cards and invitations to social engagements to Vitti at his Missouri residence. *Id.* at ¶ 11. Indeed, Plaintiffs duly served the Complaint and Summons for this lawsuit at his Missouri residence and he does not contest the personal service. *Id.* at ¶ 12.[2]

---

[2] Plaintiffs attempted to serve defendant BEPEC, LLC at Vitti's Missouri residence by leaving a Summons for Vitti, as Registered Agent. Notably, even a cursory review of the Florida Secretary of State

While living in Florida, Vitti never applied for a Florida driver's license, bought real estate, registered to vote, or established a primary care physician. *Id.* at ¶ 13. While living in Connecticut, he has not bought or leased real estate, registered to vote, or established a primary care physician. *Id.* at ¶ 15. Although he now lives in Connecticut, Vitti does not consider his residence—staying in a friend's parents' home—permanent because his employment is temporary. *Id.* at ¶ 16. Vitti has no intent to remain in Connecticut following the conclusion of his employment. *Id.* at ¶ 16. Vitti has undergone surgery to address a medical condition, pectus excavatum (a concave chest), in Kansas City and intends to return in 2014 to seek follow-up care from his Kansas City physician. *Id.* at ¶ 19.

The facts relevant to Vitti's residence, taken as a whole, demonstrate that he has not adopted a new domicile in either Florida or Connecticut. Similarly to the parties in *Yeldell v. Tutt*, 913 F.2d 533 (8th Cir. 1990), *Blakemore v. Missouri Pac. R. Co.*, 789 F.2d 616 (8th Cir. 1986), *Holmes v. Sopuch*, 639 F.2d 431 (8th Cir. 1981), *Janzen v. Goos*, 302 F.2d 421 (8th Cir. 1962), and *Cooney v. Usher*, 4:12-CV-38-JAR, 2012 WL 484697 (E.D. Mo. Feb. 14, 2012), Vitti has not yet acquired a new domicile despite moving from his Missouri residence. Even more so than the parties discussed in the case law, Vitti still maintains a residence in the first state.

It is significant that Vitti's family, personal property, bank account, doctors, and lawyers are still located in Missouri. *See e.g.*, *Cooney v. Usher*, 2012 WL 484697, at *2; *Altimore*, 420 F.3d at 769. It is significant that he still uses his Missouri residence to

---

Records, which are available online, demonstrates that Vitti was not the most recent registered agent of BEPEC, LLC before it was administratively dissolved. *See* Articles of Amendment to Articles of Organization of BEPEC, LLC, filed March 26, 2012, attached hereto as **Exhibit C.** As shown in BEPEC, LLC's corporate records, Vitti was never a member or manager of the LLC. *See also* Declaration, at ¶ 20. Plaintiffs failed to properly serve BEPEC, LLC and Vitti has no duty, authority, or interest in answering on its behalf.

21620358v1

receive official records and correspondence. *See e.g.*, *Sheehan*, 967 F.2d at 1216. It is also significant that Vitti intends to return to Kansas City this year to seek medical treatment from his Kansas City heart doctor. *See Prater v. Ball,* No. 12-CV-3493-S-DGK, 2013 WL 1755549 (W.D. Mo. Apr. 24, 2013) (considering that alleged Maryland citizen did not seek medical treatment in Maryland). It is hardly dispositive that he applied for a Connecticut driver's license. *See e.g.*, *Salveson*, 489 F. Supp. 2d 963; *Collins*, 2007 WL 604701. Most importantly, it is significant that Vitti has no intent to remain in Connecticut following the conclusion of his temporary employment. *See* Declaration, at ¶ 16; *Holmes*, 639 F.2d at 434 (a person must intend to reside in the state indefinitely "with no present or fixed intent to move on upon the happening of a reasonably certain event"). Plaintiffs cannot meet their burden to show that Vitti *is not* a citizen of Missouri as of the date they instituted this suit. Vitti respectfully requests dismissal under Rule 12(b)(1) and 28 U.S.C. §§ 1331 and 1332.

### III. THE AMENDED COMPLAINT FAILS TO RAISE A FEDERAL QUESTION BECAUSE BOTH THE RICO AND FCRA CLAIMS MUST BE DISMISSED

This Court does not have jurisdiction on the basis of a federal question. Plaintiffs fail to allege sufficient facts that would give this Court jurisdiction pursuant to 28 U.S.C. § 1331. Even if the Court assumes all of Plaintiffs' allegations true for the purposes of this Motion, Plaintiffs' Amended Complaint does not come close to stating a cognizable RICO or FCRA claim. The Court should dismiss Counts VIII and IX of Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which

21620358v1

relief can be granted and, thereafter, dismiss the entire Amended Complaint pursuant to Rule 12(b)(1) because there remains no basis for Federal Court jurisdiction.[3]

### A. Applicable Law for Motion to Dismiss for Failure to State a Claim

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." A complaint must include enough factual allegations to "raise a right to relief above a speculative level" and must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. y. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain facts sufficient to state a claim as a matter of law and mere conclusions or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In ruling on a motion to dismiss, all factual allegations are accepted as true. This "tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by merely conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, a court may only assume the veracity of well-pleaded factual allegations to determine whether those allegations give rise to an entitlement of relief. *Id.* at 679.

### B. Accepting All of Plaintiffs' Allegations as True, the Amended Complaint Fails to State a RICO Claim

In Count VIII of Plaintiffs' original complaint, they vaguely alleged that they were bringing a claim for "Civil Conspiracy RICO Violation." *See* Doc. 1, at ¶¶ 73-76. They failed to address nearly every single necessary element to state a claim for RICO. *Id.*; *see also* Doc. 4, pp. 10-13 (Suggestions in Support of Vitti's Motion to Dismiss the

---

[3] Because Plaintiffs and Plaintiffs' counsel lacked a good faith basis to assert their RICO and FCRA claims, Vitti has served them with a draft Motion for Sanctions pursuant to Rule 11(c)(2). Plaintiffs have until May 9, 2014 to voluntarily withdraw their Amended Complaint; otherwise, Vitti will file the Motion for Sanctions with the Court.

original Complaint). In response to Vitti's first Motion to Dismiss, Plaintiffs added more than five pages of boilerplate and conclusory allegations. *Compare* Doc. 1, p. 19 to Doc. 10, pp. 21-27. However, these additional allegations *still* do not state a claim for relief under RICO because RICO is simply inapposite to the alleged facts of this case. The Court need not accept Plaintiffs' "threadbare recitals of a cause of action's elements," that are "supported by merely conclusory statements," and fail to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Nitro Distrib., Inc. v. Alticor, Inc.,* 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)). RICO, however, "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

The Plaintiffs failed to allege anything that gives rise to a RICO claim. Plaintiffs' Amended Complaint amounts to nothing more than a business dispute that was localized to a few parties, occurring over a very short period of time, and with no ongoing threat to the public. For example, Plaintiffs claim that "there were serious problems regarding Mr. Vitti's management" of the bar, such as failure "to document the employees of the business," failure to "pay the utility bills" in a timely manner, failure to "engage in proper accounting method" that would "appropriately track expenses and receipts," and failure

to "pay the insurance premiums of the business." *See* Doc. 10, at ¶ 22. Plaintiffs further allege that Vitti "took an unexplained and unauthorized absence" and withdrew company funds to start a new business in Florida. *See* Doc. 10, at ¶¶ 25-28. Plaintiffs claim that Vitti committed "identity theft" by setting up a new business with Plaintiff 504 Tavern LLC's accounts. *See* Doc. 10, at ¶ 28.

Plaintiffs' RICO claim is entirely based on the allegation that "Defendants Vitti and Sippio misled Plaintiff 504 Tavern LLC's payroll processing company, Heartland [Payroll Processing], into a fraudulent contract for services (under Plaintiff 504 Tavern's business name and liability) through forging a multitude of signatures of a member of 504 Tavern LLC." Doc. 10, at ¶ 78. Notably, Plaintiffs do not identify or allege any damage—to either Plaintiffs, Heartland, or the public—that occurred as a result of Heartland allegedly being tricked into setting up the additional credit card processing services and equipment.[4] *Id.* Taken at face value, this allegation constitutes garden-variety forgery, or potentially fraud, but certainly not racketeering. The Eighth Circuit has repeatedly "ejected attempts to convert ordinary civil disputes into RICO cases." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1029 (8th Cir. 2008). This is simply not a case for RICO and Plaintiffs have improperly included the claim in an attempt to gain leverage and further defame Vitti.

### 1.     Pleading Requirements for RICO Claims

A claim for a RICO violation requires Plaintiffs to plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). Moreover, a RICO claim must be pleaded with

---

[4] Indeed, when Plaintiffs went to the Kansas City Missouri Police Department to file a police report against Vitti—two years after the alleged incident and subsequent to litigation—the police officer indicated in her report that there was "no monetary loss" from the alleged incident. *See* **Exhibit D.**

particularity under Rule 9(b). *Id.* "Under Rule 9(b)'s heightened pleading standard, allegations of fraud . . . [must] be pleaded with particularity. In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (quoting *Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011)).

### a. Plaintiffs Failed to Plead a RICO Enterprise

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Three elements must be proven to show that a RICO enterprise existed: "(1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering." *United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004). "[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" *United States v. Turkette*, 452 U.S. 576, 583 (1981). In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity, the Court must "determine if the enterprise would still exist were the predicate acts removed from the equation." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (citing *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997)). In particular, "an enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts." *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815 (8th Cir. 1992).

In attempting to plead a RICO enterprise, Plaintiffs assert only boilerplate allegations that "Defendants Vitti and Sippio, in concert, forged the signature of a

member of 504 Tavern LLC (Shawn Nelson) multiple times in order to organize a business enterprise organized for the sole purpose of defrauding the public." Doc. 10, p. 23. In addition failing to describe this allegation with any particularity, the allegation—accepted as true for the purposes of this Motion—fails to demonstrate that Vitti and Sippio had anything in common other than allegedly "undertaking the acts of racketeering." Therefore, Plaintiffs fail to allege an enterprise because, among many other shortcomings, they allege no "ascertainable structure distinct from the conduct of a pattern of racketeering." *See Lee*, 374 F.3d at 647. The Court should dismiss Count VIII on this basis alone. *See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008) ("Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails.").

### b. Plaintiffs Failed to Plead a Pattern of Racketeering

To establish a pattern of racketeering, "at least two acts of racketeering activity are required." *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999) (citation omitted). The acts of racketeering, called "predicate acts," must be listed in 18 U.S.C. § 1961(1). *Id.* Moreover, "the predicate acts must be related and must 'amount to or pose a threat of continued criminal activity.'" *Id.* In other words, the predicate acts supporting a RICO claim must demonstrate "both relatedness and continuity." *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 979 (8th Cir. 1991). The two predicate acts must occur within a specified time-frame. *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 914 (W.D. Mo. 2010) (citing 18 U.S.C. § 1961(5)).

Significantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" the continuity requirement. *Terry*

14

*A. Lambert Plumbing*, at 980. Additionally, a case that involves a plan to defraud a single company does not state a RICO claim. *Id.* at 981. *See also Trans World Airlines, Inc. v. Berger*, 864 F. Supp. 106 (E.D. Mo. 1994) (Airline did not allege threat to social well-being, where travel agency's conduct was directed towards single fraudulent goal, involved only one set of perpetrators and one victim, and took place over an 18–month period.).

At best, Plaintiffs' Amended Complaint vaguely alleges one predicate act—wire fraud. *See* 18 U.S.C.A. § 1961(1) (listing crimes under 18 U.S.C.A. § 1343). However, when wire fraud is pled as a RICO predicate act, Plaintiffs must allege "(1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402, 406 (8th Cir. 1999). Plaintiffs' boilerplate allegations, once again, are insufficient. Moreover, a claim for civil conspiracy pursuant to RICO is only permitted when the plaintiff suffers an injury from an act that is independently wrongful under RICO. *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000). Plaintiffs' Amended Complaint, once more, fails to plead or demonstrate any injury from the alleged acts constituting wire fraud.

The allegations set forth in the Amended Complaint also fail both the relatedness and continuity requirements. *See Terry A. Lambert Plumbing, Inc.*, 934 F.2d at 979. Significantly, Plaintiffs fail to allege, and cannot allege, that this alleged misconduct lasted longer than " a few weeks or months," or that it threatens future criminal conduct; the allegations, therefore, fail to establish a RICO claim. *See Terry A. Lambert Plumbing*, at 980. Perhaps purposely, Plaintiffs failed to include any of the dates for the

alleged instances of wire fraud. *See* Doc. 10, pp. 23-25; However, Plaintiffs generally allege that the fraud occurred when Vitti was in Florida, sometime after February 3, 2012, but before they terminated his alleged employment on February 28, 2012. *See* Doc. 10, pp. 7-8. These few weeks, at best, are insufficient as a matter of law to satisfy the requirements of RICO. Additionally, as discussed in *Terry A. Lambert Plumbing*, an alleged plan to defraud a single company does not state a RICO claim. *Id.* at 981. *See also Trans World Airlines, Inc. v. Berger*, 864 F. Supp. 106 (E.D. Mo. 1994).

When faced with Vitti's initial Motion to Dismiss, Plaintiffs amended their pleading to include an allegation that Defendants intended to "organize a business and/or criminal organization in another state for the purpose of orchestrating a criminal fraud on the public." Doc. 10, p. 23. This allegation constitutes a bad faith exaggeration of an earlier allegation that Heartland, a credit card processing company, received complaints from credit card users about fraudulent charges. *Compare* Original Complaint, Doc. 1, at ¶ 28(o) *with* Amended Complaint, Doc. 10, at ¶ 78(h) (Plaintiffs supposedly learned about the alleged forgery when Heartland called to discuss higher instances of disputed charges). However, the complaints received by Heartland only indicate that some patrons of the bar used stolen credit cards; the complaints do not support an assumption that Vitti played any role in stealing credit cards or running charges on cards he had reason to believe were stolen. Not surprisingly, the patron use of stolen credit cards is a common problem in the night club industry. The mere occurrence of patrons' fraudulent credit charges is not evidence of Vitti's wrongdoing, much less racketeering and organized crime. There are absolutely no facts in the Amended Complaint to support the conclusory allegation that Vitti "organize[d] a business and/or criminal organization in

another state for the purpose of orchestrating a criminal fraud on the public." Plaintiffs' RICO allegations regarding a supposed threat to the public are overstated to the point of absurdity.

In sum, nothing in the Amended Complaint can be relied upon to state a claim for RICO. All the allegations of wrongdoing are confined to a short period of time and, even if assumed true, involved only a single business enterprise. That single business involved also cannot identify any damage or injury from the alleged "wire fraud." There is no allegation that Vitti is involved in organized crime or that the alleged conduct poses future criminal conduct to third parties. Finally, the allegations in the Amended Complaint relating to Count VIII are devoid of the particularity required by Rule 9(b).

### C. Accepting All of Plaintiffs' Allegations as True, the Amended Complaint Fails to State a FCRA Claim

Count IX, Plaintiffs' claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.,* is even more farfetched. Tellingly, Plaintiffs added this claim only after Vitti moved to dismiss their original complaint and highlighted the absence of diversity jurisdiction and the fatal flaws in their RICO claim. The Amended Complaint includes this last ditch effort to remain in Federal Court. However, because the Amended Complaint fails to state a claim pursuant to the FCRA upon which relief can be granted, this claim should also be dismissed.

Congress enacted FCRA in 1970 to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The purpose of the FCRA is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner

which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements" of the FCRA. 15 U.S.C.A. § 1681(b). It is not entirely clear how Plaintiffs construe the factual allegations in this case to somehow state a claim for a violation of the FCRA, as Vitti is obviously not a credit report agency nor do they allege that he furnished incorrect information to a credit reporting agency. *See e.g., Hurocy v. Direct Merchants Credit Card Bank, N.A.*, 371 F. Supp. 2d 1058, 1060 (E.D. Mo. 2005) (the FCRA permits a consumer to bring a claim under § 1681s–2(b) against a furnisher of incorrect information to a credit reporting agency); *Zotta v. NationsCredit Fin. Servs. Corp.*, 297 F. Supp. 2d 1196, 1204 (E.D. Mo. 2003) (FCRA provides consumers with a cause of action against credit reporting agencies for negligent noncompliance with § 1681s–2(b)). Moreover, Plaintiffs claim no damages from any negative credit reporting or that Vitti's alleged conduct even resulted in negative credit reporting.

Plaintiffs essentially allege that Vitti or defendant Sippio forged plaintiff Shawn Nelson's name on a credit report authorization, which Heartland Payroll Processing then used for the purposes of setting up credit card processing services for the new bar in Orlando, Florida. *See* Doc. 10, pp. 11-12; 27. Plaintiffs cite 15 U.S.C § 1681(b)(f) and state that it "prohibits any 'person' from obtaining or using a credit report on any consumer unless the person has a permissible purpose for procuring the report." Doc. 10, p. 27. However, this statute applies only to credit reporting agencies and those who request or use credit reports. Plaintiffs, significantly, allege only that a defendant forged a credit report authorization form allowing *Heartland Payroll Processing*—not Vitti—to obtain and use the credit report. Doc. 10, pp. 10; 27 According to this allegation,

Heartland Payroll Processing was the "user" of Plaintiff Nelson's credit report. *Id.* Even if Plaintiffs' allegations are accepted as true, they fail to state a claim under the FCRA. There is simply no basis under the FCRA for private causes of action against alleged forgers or identity thieves. *See* Gregg Stevens, Update on Identity Theft Under the FCRA, 58 Consumer Fin. L.Q. Rep. 72 (2004) (addressing ways that identity theft can result in liability under the FCRA for those who furnish incorrect information to credit reporting agencies, but no mention of liability under the FCRA for the imposters). In any event, the alleged incident upon which Plaintiffs attempt to state their FCRA claim was discovered more than two years before the Amended Complaint was filed on April 4, 2014, making the claim barred by the statute of limitations. *See Lawhorn v. Trans Union Credit Info. Corp.*, 515 F. Supp. 19, 20 (E.D. Mo. 1981); Doc. 10, pp. 7-8 (alleged that fraud occurred and while Vitti was in Florida, sometime after February 3, 2012, but before they terminated his alleged employment on February 28, 2012). The Court should dismiss Count IX with prejudice.

**D.    The Court Should Dismiss the Remaining State Law Claims for Lack of Jurisdiction**

After the proper dismissal of Counts VIII and IX, the only counts over which the Court had original jurisdiction, the Court should dismiss the remaining state law claims. "Where, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise [supplemental] jurisdiction." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (citation omitted). "In deciding whether to remand a case in this context, the courts consider 'factors such as judicial economy, convenience, fairness and comity.'" *Id.* (citation omitted). This lawsuit and the pending State Court Case—involving the same parties and the same dispute—were

filed within 20 days of each other. Neither case has proceeded beyond the initial response date. Judicial economy, convenience, fairness and comity will all be served if the Court dismisses this suit and the parties proceed to resolve their disputes in the pending State Court Case. *See Glorvigen,* 581 F.3d at 749.

## IV.  CONCLUSION

For the reasons stated herein, defendant Philipp Vitti respectfully moves the Court for an order dismissing Counts VIII and IX with prejudice for failure to state a claim upon which relief can be granted, and dismissing Plaintiffs' Amended Complaint for lack of subject matter jurisdiction, as the parties lack complete diversity and the Amended Complaint fails to raise a federal-question.

LATHROP & GAGE LLP


By:  */s/ Kate O'Hara Gasper*
Richard D. Rhyne  (23692)
RRhyne@LathropGage.com
Kate O'Hara Gasper  ((61198)
kgasper@lathropgage.com
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri  64108-2618
Telephone:  816.292.2000
Telecopier:  816.292.2001

Attorneys for Defendant
Philipp Vitti

21620358v1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 18th day of April, 2014, a true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.


*Kate O'Hara Gasper*
An attorney for Philipp Vitti

21620358v1