**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

504 TAVERN LLC, *et al*.,            )
                                     )
and                                  )
                                     )
            Plaintiffs,              )        Case No. 4:14-cv-115-FJG
                                     )
v.                                   )
                                     )
PHILIPP VITTI, *et al*.,             )
                                     )
            Defendants.              )

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………......5

STANDARD OF REVIEW……………………………………………………5

I.    Plaintiffs And Defendant Vitti Are Diverse For The Purposes Of Jurisdiction…..6

    A.    The Law Regarding Diversity Jurisdiction………………………………..6

    B.    Defendant Vitti Is Domiciled In The State Of Florida…………………...7

    C.    Defendant Has Abandoned His Domicile In The State Of Missouri……..9

    D.    Plaintiffs' Should Be Allowed Leave To Conduct Limited Discovery…..9

II.    The Amended Complaint States A Claim Under The RICO

Statute……………………………………….…………………….………..10

    A.    Plaintiffs' Amended Complaint Adequately Pleads The Existence Of
An "Enterprise"
………………………………………….…………………………………..12

    B.    The Amended Complaint Adequately Pleads A Pattern Of
Racketeering …………………………………………………………………13

    C.    Plaintiffs Have Pled An Injury In Fact From The RICO Violations…….16

        1.    The Initial Forgery By Mr. Vitti (November 2011 – Not
At Issue In This Case)……………………………………………16

        2.    The Later Forgeries and Identity Theft By Mr. Vitti And
His Co-conspirators (February 2012)……………………………17

III.    The Amended Complaint States A Claim Under The FCRA……………………17

    A.    The FCRA's Provisions Do Not <u>Only</u> Apply To "Credit
Reporting Agencies" ……………………………………………………18

    B.    The Plain Language Of The Amended Complaint States A Claim
Against Defendant Vitti Under The FCRA……………………………...19

    C.    Plaintiffs' FCRA Claim Is Within The Statute Of Limitations………….22

## TABLE OF AUTHORITIES

Cases

*Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633, (1999)……………………………..5

*Booker v. City of St. Louis*, 309 F.3d 464, 467 (8th Cir. 2002)…………………………..6

*Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004)…………..6

*Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990)…………………………………………6

*Holmes v. Sopuch*, 639 F.2d 431, 434 (8th Cir. 1981)……………………………………..9

*Handeen v. Lemarie*, 112 F.3d 1339, 1349 n. 12 (8th Cir. 1997)………………………...12

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 918 (8th Cir. 2001)………… .12, 13

*Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993)…………………………………… .13

*Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 991 (8th Cir. 1989)…….16

*Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998)……………………………..18

*Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 48 (2nd Cir. 1997)………………18

*Zamora v. Valley Federal Sav. & Loan Asso.*, 811 F.2d 1368, 1370 (10th Cir. 1987)….18

*Kennedy v. Border City Sav. & Loan Asso.,* 747 F.2d 367, 369 (6th Cir. 1984)………...18

*Hansen v. Morgan,* 582 F.2d 1214, 1219 (9th Cir. 1978)………………………………..18

*Daley v. Haddonfield Lumber*, 943 F. Supp. 464, 467 (Dist. N.J. 1997)………………...19


Statutes and Rules

18 U.S.C. § 1341…………………………………………………………………………14

18 U.S.C. § 1343…………………………………………………………………………14

18 U.S.C. § 1957…………………………………………………………………………14

18 U.S.C. § 2314…………………………………………………………14

RSMo. § 570.130………………………..…………………………………14

RSMo. § 570.223………………………..…………………………………14

15 U.S.C. § 1681…………………………………………………………22

Fed.R.Civ.P. 12……………………………………………………5, 6

## INTRODUCTION

Plaintiffs 504 Tavern LLC and Shawn Nelson submit the following suggestions in opposition to Defendant Philipp Vitti's Motion to Dismiss:

1. On February 6, 2014, Plaintiffs filed their Complaint against the movant Defendant, Philipp Vitti. Plaintiffs filed their Amended Complaint on April 4, 2014.

2. On or about April 18, 2014, Defendant Philipp Vitti filed the instant Motion to Dismiss under Fed. R. Civ. Pro. 12(b).

3. Defendant Vitti's Motion asserts several arguments, all of which are baseless and without support in the law. Several of Defendant's points are directly contradicted by controlling case law that Defendant fails to acknowledge; several points grossly misstate the allegations made in Plaintiffs' Amended Complaint; and some points are disconnected from any meaningful sense of logic or legal principal. Therefore, and in accordance with the suggestions below, Plaintiffs respectfully request that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint be denied in its entirety.

## STANDARD OF REVIEW

Defendant's Motion must be read through the appropriate lens. When deciding a motion to dismiss under Rule 12(b)(6), the Court must assume that all material facts alleged in the complaint are true. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633, (1999). In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint liberally, taking all allegations as true, and will affirm only if it appears beyond a doubt that [the plaintiff] cannot prove any set of facts

in support of the claim." *Booker v. City of St. Louis*, 309 F.3d 464, 467 (8th Cir. 2002). A dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004).

With these principles in mind, Plaintiffs turn to the issues raised by Defendant Vitti's Motion to Dismiss.

**I.      Plaintiffs And Defendant Vitti Are Diverse For The Purposes Of Jurisdiction**

Defendant attacks Plaintiffs' Amended Complaint on the basis that diversity jurisdiction does not lie. Defendant claims that his domicile is at his mother's home, in the State of Missouri. Defendant attaches an affidavit that, allegedly, supports his claim that his actual domicile is in Jackson County, Missouri, with his mother.

Nonetheless, the sparse record developed at this early stage points to a different conclusion. As discussed below, Mr. Vitti's mother, that he supposedly resides with permanently, believes him to be living in Florida and has no idea how to contact him. Additionally, Mr. Vitti has represented himself to be a resident of the State of Florida in lawsuit documents filed in Florida as well as other documents filed with the Florida Secretary of State. Accordingly, as discussed below, Plaintiffs submit that the parties in this case are, in fact, diverse, and jurisdiction under 28 U.S.C. § 1332, *et seq.*, is appropriate.

**A.      The Law Regarding Diversity Jurisdiction**

The terms "domicile" and "citizenship" are synonymous for purposes of diversity jurisdiction. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). "To establish domicile, an

individual must both be physically present in the state and have the intent to make his home there indefinitely." *Id.* Intention to remain in the state permanently, however, is not necessary. *Id.* Once an individual has established domicile in a particular state, he remains domiciled there until he legally acquires a new domicile. *Id.*

### B. Defendant Vitti Is Domiciled In The State Of Florida

In his Motion, Defendant Vitti asserts that he is domiciled in Missouri at his mother's house in Kansas City and, therefore, diversity jurisdiction does not lie. In support, Mr. Vitti emphasizes that birthday cards are sent to him at his mother's house, that he receives some communications from his doctor at his mother's house, and that his bank account with Bank of America was originally initiated in the State of Missouri. Respectfully, these assertions do not contradict the inconvenient facts in the record demonstrating that Mr. Vitti is not domiciled in Missouri.

For instance, the process server that attempted to serve Mr. Vitti (as the registered agent of co-defendant BEPEC LLC) at his mother's house in Missouri, Mr. Robert Vick – a law enforcement officer – executed an affidavit stating what he was told when he attempted to serve Mr. Vitti.[1] Officer Vick reports that he was told by Mr. Vitti's mother that "Mr. Vitti is living in Florida, but she does not know where, and has no contact information for him." *See Exhibit 1, affidavit of Robert Vick*. This affirmation from a process server/law enforcement officer is significant because it clearly contradicts Mr. Vitti's assertion that he is actually domiciled at his mother's house in Missouri. In other words, if Mr. Vitti's actual domicile is at his mother's home in Missouri, his mother is unaware of it. Further this illustrates an intention of Mr. Vitti to stay in Florida and not return to Missouri.

---

[1] Mr. Vick is a police officer in Henry County, Missouri, as well as a part-time process server.

In short, either Mr. Vitti's residence is in in Florida as stated by his mother, and his permanent domicile is in Florida, or Mr. Vitti's mother misrepresented Mr. Vitti's actual domicile to the process server. It must be one or the other; it cannot be both. For Mr. Vitti's argument to prevail, the Court would have to conclude that the qualified process server/law enforcement official executed a false affidavit and that Mr. Vitti's mother was lying.

Notably, even Mr. Vitti does not contend his current residence is in Missouri. Mr. Vitti has represented in Court documents filed in the Orange County State Court in the State of Florida that his domicile is in the State of Florida. As demonstrated in the attached Exhibit, when Mr. Vitti filed a lawsuit on September 24, 2012, he declared his domicile to be in Orange County, Florida. *See Exhibit 2, p. 2.* Equally significant is the subject matter of that Florida lawsuit. Mr. Vitti's complaint in that Florida matter was, essentially, an action on a promissory note. The promissory note attached to Mr. Vitti's state court complaint gives an address for Mr. Vitti of "5109 Westwinds dr. [sic], Orlando, FL 32819" where payments on the note to Mr. Vitti were supposed to be sent. *See Exhibit 2, p. 7-8 "Exhibit G".*

Moreover, Mr. Vitti represented to the Florida Secretary of State that he was domiciled in the State of Florida with regard to the very enterprise that forms the basis of this lawsuit. In February and March of 2012, Mr. Vitti represented in documents filed with the Florida Secretary of State that he was the registered agent of the Florida enterprise (co-Defendant BEPEC LLC) as well that he was an owner of the enterprise, and provided a Florida address to the State government. *See Exhibit 3.* The logical conclusion is that Mr. Vitti's actual domicile is the state of Florida and he has long ago

abandoned his supposed domicile in the State of Missouri.

**C.    Defendant Vitti Has Clearly Abandoned His Domicile In The State Of Missouri**

The law requires that "[o]nce acquired, a person's domicile persists until a new one is acquired; it is presumed to continue until it is shown to have changed." *Holmes v. Sopuch*, 639 F.2d 431, 434 (8th Cir. 1981). The facts here clearly demonstrate that Mr. Vitti changed his domicile in 2012 – wherever it was previously – to the State of Florida.

In contrast to the overwhelming weight of the evidence, Defendant Vitti places much emphasis on his birthday cards and a sole medical procedure in Missouri. However, conspicuously absent from Mr. Vitti's proof is documentation typically demonstrating one's domicile: tax returns that plainly state one's true residence. Mr. Vitti's failure to set forth such records is presumably because those records would wholly contradict Mr. Vitti's assertion that his true domicile is in Missouri.

In the end, Mr. Vitti's assertion that his true residence is with his mother in Missouri is contradicted by none other than Mr. Vitti's own mother, who believes him to be domiciled in Florida. It is simply not possible that Mr. Vitti's actual domicile is with his mother when she does not believe it to be so.  Also, as Mr. Vitti is admittedly living in another state (Connecticut), he can not have (re)established domicile in Missouri.

**D.    Plaintiffs' Should Be Allowed Leave To Conduct Limited Discovery Regarding Defendant Vitti's Actual Domicile**

At a minimum, Plaintiffs should be allowed to conduct limited discovery in order to reconcile the conflicting accounts regarding diversity jurisdiction that have been submitted to this Court.  Accordingly, Plaintiffs' have filed a contemporaneous Motion for Leave to conduct limited discovery in order to perfect jurisdiction in this Court.

Plaintiffs are willing to limit discovery on these disputed issues to Mr. Vitti, Ms. Gardner (Mr. Vitti's mother), and Mr. Vick (the process server/police officer).

## II.    The Amended Complaint States A Claim Under The RICO Statute

Defendant Vitti seeks to dismiss Plaintiffs' claims under the Federal RICO Statute. Reviewing the law in concert with the Amended Complaint, to be charitable, Defendant's position is erroneous. Plaintiffs' allegations in support of their RICO claim clearly state a viable cause of action.

In his Motion, Defendant Vitti asserts that Plaintiffs have failed to plead facts meeting two elements of Plaintiffs' claim under the RICO statute: (1) the existence of an "enterprise," and (2) a "pattern of racketeering" sufficient to state a claim under the RICO statute. These assertions will be taken in turn below.

### D.    Plaintiffs' Amended Complaint Adequately Pleads The Existence Of An "Enterprise" Under The RICO Statute

Defendant Vitti, in two conclusory paragraphs, asserts that Plaintiffs have not sufficiently pled the existence of an "enterprise" under the RICO statute. In setting forth this argument, Defendant ignores the multitude of allegations made by Plaintiffs in support of the existence of a RICO enterprise. Regarding the existence of a RICO enterprise, Plaintiff's have pled, among other things:

• That the Defendants purposefully misappropriated and stole personal information of the Plaintiffs in order fraudulently organize an enterprise in Florida [Doc 10, Amended Complaint, paragraphs 28(k),(l),(m), 78(a),(b)(c)];

• In so doing, Defendants, in concert, purposefully forged the signature of Plaintiff Shawn Nelson no less than 6 times on various documents. [Doc 10,

Amended Complaint, paragraphs 28(m),(p), 78(c)];

• The purpose of repeatedly forging Mr. Nelson's signature was to organize a criminal and fraudulent enterprise in the State of Florida. [Doc 10, Amended Complaint, paragraphs 28(k),(l),(m),(q)];

• That criminal and fraudulent enterprise in the State of Florida was organized under the personal information of Plaintiff Shawn Nelson and the corporate business information of Plaintiff 504 Tavern LLC. [Doc 10, Amended Complaint, paragraph 28(l), 78(n)];

• Plaintiff 504 Tavern's credit card processing company, Heartland Payroll Processing Inc., was misled into setting up fraudulent credit card accounts, under the Plaintiffs' names, for the purpose of fraudulently processing credit card payments in order to defraud the public in the State of Florida. [Doc 10, Amended Complaint, paragraphs 28(n),(o),(p), 78(f)(g)(n)];

• The fraudulently established Florida enterprise was organized for the purpose of defrauding the public and was, in fact, used to defraud the public. [Doc 10, Amended Complaint, paragraph 78(h),(n)];

• The fraudulent Florida enterprise would have continued indefinitely into the future had Heartland's internal fraud unit not discovered the systematic and purposeful overcharging of consumer credit cards and then notified Plaintiffs as the purported "owners" of the fraudulent enterprise organized by Defendants using the Plaintiffs' information. [Doc 10, Amended Complaint, paragraphs 28(o), 78(o)].

Defendant Vitti responds to these allegations with the dubious assertion that Plaintiff's have not alleged a RICO enterprise because the allegations of the Amended Complaint do not assert that there was an "ascertainable structure distinct from the conduct of a pattern of racketeering." Doc. 15, p. 19. Defendant's argument purposefully avoids the facts pled in Plaintiff's Amended Complaint as well as applicable law.

Enterprise liability under the Federal RICO statute exists if the actor is "associated with an enterprise and participate[s] in the conduct of its affairs – that is, participate[s] in the operation or management of the enterprise itself[.]" *Handeen v. Lemarie*, 112 F.3d 1339, 1349 n. 12 (8th Cir. 1997) (emphasis omitted). To direct a business's normal activities is to participate in the conduct of an enterprise within the meaning of RICO. *Abels v. Farmers Commodities Corp*., 259 F.3d 910, 918 (8th Cir. 2001), citing *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (RICO extends to those who participate in the operation or management of an enterprise, including outsiders associated with the enterprise who participate in the direction of its activities through a pattern of racketeering activity); See also *Handeen v. Lemarie*, 112 F.3d 1339, 1349 n. 12 (8th Cir. 1997) (same).

 "[I]t is not necessary that a RICO defendant have wielded control over the enterprise, but the plaintiff must prove some part in the *direction* . . . of the enterprise's affairs." *Id*. The intention of Congress was for § 1962(c) to penalize all "those who, by virtue of their association or employment, play a part in directing the enterprise's affairs." *Id*.

Plaintiffs have alleged that the Florida enterprise, fraudulently organized through stolen information and multiple forgeries, was itself organized, pursued, and maintained

to perpetuate criminal fraud. There is no dispute that the individual Defendants Vitti and Sippio were intimately involved and instrumental in the organization and management of the Florida enterprise (Defendant BEPEC LLC). The Amended Complaint alleges that virtually every document used to organize the Florida enterprise bears a signature forged by Mr. Vitti himself and those criminal acts were taken in concert and at the behest of the other principal of the Florida enterprise, Mr. Sippio.

The Amended Complaint also alleges that Defendant Vitti not only directed the affairs of the enterprise, but that he also committed extraordinary frauds in order to organize the fraudulent enterprise in the first place. The Amended Complaint asserts that the Defendants jointly formulated and participated in a conspiracy to commit multiple acts of wire fraud. Plaintiffs have alleged that Defendants did not merely hatch a plan to defraud Plaintiff 504 Tavern LLC, but that the pre-arranged and systematic fraud of 504 Tavern was for the purpose of organizing a wholly separate RICO enterprise in Florida that, itself, was systematically organized for the purpose of defrauding the public.

Plaintiffs have clearly pled the existence of an enterprise.

**E.**    **The Amended Complaint Adequately Pleads A Pattern Of Racketeering Under The RICO Statute**

With regard to the requirement to plead a "pattern of racketeering activity," it is sufficient that the plaintiff plead a foreseeable use of the mails or wires for the purpose of carrying out a scheme to defraud. *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 918 (8th Cir. 2001), citing *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 991 (8th Cir. 1989). "The crime of mail fraud is broad in scope and its fraudulent aspect is measured by a non-technical standard, condemning conduct which fails to conform to standards of moral uprightness, fundamental honesty, and fair play." *Id.*

13

Defendant alleges that the Amended Complaint pleads <u>only one act</u> of wire fraud under 18 U.S.C. §§ 1341 and 1343 as a predicate act to support Plaintiff's RICO allegations. Therefore, Defendant states, Plaintiff's RICO claim must fail. Doc. 15, p. 20. The sole achievement of this assertion is to misrepresent the plain language of the Amended Complaint. The following quotes and allegations from the Amended Complaint and instructive:

 r. With regard to Plaintiffs' RICO allegations, Defendants engaged in predicate acts indictable under the following provisions of the United States Code and Missouri law:

 (1) Multiple acts of wire fraud as alleged above in violation of 18 U.S.C. §§ 1341 and 1343;

 (2) Acts in violation of 18 U.S.C. § 1957 as alleged above. [engaging in monetary transactions in property derived from unlawful activity];

 (3) Acts in violation of 18 U.S.C. § 2314 as alleged above. [transportation of stolen monies];

 (4) Acts in violation of the criminal provisions of RSMo. §§ 570.130 [fraudulent use of a credit device] and 570.223 [forgery] as alleged above.

See Doc. 10, Amended Complaint, paragraphs 78(r)(1)-(4).

**Allegations Pertaining to Wire Fraud**

Regarding acts pled constituting wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, Plaintiffs refer the Court to paragraphs 28(k), 28(l), 28(m), 28(n), 28(o), 28(p)(4), 28(p)(6), 28(q)(1)-(4), 78(d)-(n), from the Amended Complaint, among other acts of misconduct.

**Allegations Pertaining to Monetary transactions in property derived from unlawful activity**

Regarding acts pled constituting a violation of 18 U.S.C. § 1957, Plaintiffs refer

the Court to paragraphs 27, 28(f), 28(g), 28(i), 28(o), from the Amended Complaint, among other acts of misconduct.

**Allegations Pertaining to Transportation of stolen monies**

Regarding acts pled constituting a violation of 18 U.S.C. § 2314, Plaintiffs refer the Court to paragraphs 27, 28(f), 28(g), 28(h), 29(i), from the Amended Complaint, among other acts of misconduct.

**Allegations Pertaining to Forgery/Fraudulent use of a credit device**

Regarding acts pled constituting a violation of RSMo. §§ 570 and 570, Plaintiffs refer this Court to paragraphs 28(k), 28(l), 28(m), 28(n), 28(o), 28(p)(1)-(6), 28(q)(1)-(4), 46, 47, 53-55, 78(a)-(c), from the Amended Complaint, among other acts of misconduct.

In the face of these quotations and direct citations from the Amended Complaint, Defendant asserts that Plaintiffs have <u>only</u> asserted wire fraud as a predicate RICO act.

Regardless, the predicate acts pled in support of Plaintiffs' RICO claim extend far beyond mere allegations of wire fraud. Additionally, all of the criminal acts pled and specifically delineated in the Amended Complaint fall within the list of acts chargeable under 18 U.S.C. § 1961 to support a civil RICO claim. Finally, even if Plaintiffs had only pled wire fraud as a predicate act, as discussed below, the wire fraud allegations pled in the Amend Complaint were vast and composed multiple separate acts of wire fraud. Certainly, those multiple separate acts of wire fraud occurring at different times would, on their own, support Plaintiffs' RICO allegations.

In the end, Defendant is entitled to his opinion on the law; however, Defendant is not entitled to his own set of facts. More importantly, Defendant is not entitled to ignore the facts in the Amended Complaint. Plaintiffs' allegations sufficiently plead a RICO

claim.

**F.      Plaintiffs Have Pled An Injury In Fact From The RICO Violations**

Defendant Vitti also intimates several times that Plaintiffs have not pled any injury in association with the many facts pled regarding Mr. Vitti's multiple acts of forgery and wire fraud. This, too, is erroneous. In support of this assertion, Defendant attaches to his Motion a police report that, unfortunately, only summarizes a small part of the fraudulent misconduct that Defendant Vitti committed resulting in substantial financial harm to the Plaintiffs. In any event, the actual facts and allegations from the Amended Complaint clearly state actual harm, but the multiple acts of forgery and fraud by Mr. Vitti have been conflated by the Defendant's argument that no injury occured.

**3.      The Initial Forgery By Mr. Vitti (November 2011 – Not At Issue In This Case)**

The Police report attached to Defendant Vitti's Motion only references one instance of Mr. Vitti's criminal identity theft – a forgery occurring on or about November of 2011. Notably, that instance of identify theft by Mr. Vitti is not even mentioned in the Amended Complaint.

It is true that in November 2011, Mr. Vitti stole Mr. Nelson's personal data profile and forged his signature to bind Plaintiff Nelson and 504 Tavern LLC to lease agreements of which the Plaintiffs had no knowledge. However, Plaintiffs have not invoked that criminal act by Mr. Vitti as a basis for any claim in this lawsuit. In other words, Plaintiffs are aware that Mr. Vitti forged signatures in November of 2011, but Plaintiffs are not raising that fraud to this Court at this time. In any event, Plaintiffs' Amended Complaint, not the content of a police report, dictates whether Plaintiffs' have alleged facts sufficient to support their causes of action.

4. **The Later Forgeries and Identity Theft By Mr. Vitti And His Co-conspirators (February 2012)**

Defendant Vitti, along with his co-Defendants, committed multiple other identity thefts that the Plaintiffs are attempting to redress through this lawsuit, and which caused significant harm and damage. As stated in Plaintiffs' Amended Complaint, Mr. Vitti forged multiple signatures of Plaintiff Shawn Nelson for the purpose of misleading the Plaintiffs' payroll processing company into creating "legitimate" payroll accounts in the state of Florida without the knowledge of the Plaintiffs, but using the names of the Plaintiffs. These accounts were created by Mr. Vitti forging the signature of Plaintiff Nelson. *See Exhibit 4, affidavit from Shawn Nelson*.

In other words, Defendant Vitti's effort to re-direct this Court's focus on his original forgery (from November 2011) is merely an attempt to distract this Court from his subsequent forgeries and identity theft (from February 2012) that are alleged in the Amended Complaint. Mr. Vitti's later forgeries and identity theft (used to set up fraudulent out-of-state business accounts for a criminal enterprise) are central to the damages alleged in the Amended Complaint.

III. **The Amended Complaint States A Claim Under The Fair Credit Reporting Act**

Defendant also asserts that Plaintiffs have failed to state a claim under the Fair Credit Reporting Act. On this point, Defendant boldly announces that the entire body of the FCRA applies <u>only</u> to "credit reporting agencies"[2] and no one else – certainly not identify thieves. If this premise is false, the Defendant's argument fails.

---

[2] As far as Plaintiffs are aware, at no point do the provisions of the FCRA refer to "credit" reporting agencies.

Defendant's premise is false. As discussed below, Defendant fails to appreciate the plain language of the FCRA and cases interpreting the statute. Plaintiffs have pled that Defendant Vitti obtained and used a consumer report under fraudulent pretenses and used that consumer report for an impermissible purpose in violation of the FCRA. Based on the plain language of the FCRA, a cascade of reported cases, and a common sense interpretation of the statute, Defendant's impoverished argument fails.

### D. The FCRA's Provisions Do Not <u>Only</u> Apply To "Credit Reporting Agencies"

Defendant wrongly asserts that the provisions of the FCRA only constrain the behavior of consumer reporting agencies. A sample of cases clearly demonstrates the contrary: *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (attorney held liable under the FCRA for obtaining a consumer report without a permissible purpose); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 48 (2nd Cir. 1997) (reversing the District Court's dismissal on the basis that non consumer reporting agency "users" could be liable for obtaining a consumer report for an impermissible purpose); *Zamora v. Valley Federal Sav. & Loan Asso.*, 811 F.2d 1368, 1370 (10th Cir. 1987) ("[I]f a [non consumer reporting agency] user requests information for a purpose not permitted by § 1681b while representing to the reporting agency that the report will be used for a permissible purpose, the user may be subject to civil liability for obtaining information under false pretenses."); *Kennedy v. Border City Sav. & Loan Asso.,* 747 F.2d 367, 369 (6th Cir. 1984) (a civil cause of action exists under the FCRA for obtaining a consumer report under false pretenses); *Hansen v. Morgan,* 582 F.2d 1214, 1219 (9th Cir. 1978) (obtaining a consumer report under false pretenses or without a permissible purpose is the basis for civil liability under §1681n of the FCRA); *Daley v. Haddonfield Lumber*, 943 F.

Supp. 464, 467 (Dist. N.J. 1997) (a person is liable for obtaining information under false pretenses when that person requests a report from an agency without disclosing the improper purpose for which the person in fact seeks the report); *Wilder v. Prestige Auto, Inc.*, 2005 U.S. Dist. LEXIS 9459, *5 (E.D. Va., May 9, 2005) ("The Defendants' impermissible <u>use</u> of the credit reports violates the FCRA . . . The statute only allows the use of such a report if the report 'is obtains for a purpose for which the consumer report is authorized to be furnished under 15 U.S.C. 1618b[.]'" (emphasis added) (quotations original).

An abundance of additional cases stand for the above stated proposition that the provisions of the FCRA do not merely create liability for consumer reporting agencies. The implication of Defendant's failure to cite any case to support the notion that the FCRA <u>only</u> applies to consumer reporting agencies (i.e., Experian, Equifax, TransUnion, etc.) appears to confirm that no such case law exists.

E.     **The Plain Language Of The Amended Complaint States A Claim Against Defendant Vitti Under The FCRA**

Defendant attacks the Amended Complaint for failing to state conduct by Mr. Vitti that falls within the prohibitions of the FCRA. Specifically, Mr. Vitti's Motion states: "Plaintiffs, significantly, allege only that a defendant forged a credit report authorization form allowing Heartland Payroll Processing – <u>not Vitti</u> – to obtain and use the credit report." Doc. 15, p. 23 (emphasis added).

It would be difficult to overstate the Defendant's effort to mislead the Court as to Plaintiffs' allegations regarding Mr. Vitti's <u>obtainment and use</u> of a consumer report in violation of the FCRA. Turning again to the Amended Complaint, the following quotations are relevant:

Defendant Vitti assumed Plaintiff Nelson's identity for the purpose of <u>obtaining and using</u> Mr. Nelson's consumer/credit report without a permissible purpose and without Mr. Nelson's knowledge or consent. [Doc. 10, Amended Complaint, paragraph 84. (emphasis added).]

Mr. Vitti, along with his co-Defendants, <u>used</u> Mr. Nelson's unlawfully <u>obtained</u> credit report to set up business accounts for a business that Mr. Nelson did not know existed and did not consent to participate in through the use of his credit information. Although the term "user" is undefined by the FCRA, Defendant Vitti clearly <u>qualifies as a "user"</u> of Mr. Nelson's credit report under the FCRA. [Doc. 10, Amended Complaint, paragraph 85. (emphasis added).]

[. . .] Defendant Vitti willfully <u>obtained and used</u> Mr. Nelson's consumer/credit report without a permissible purpose and with an intent to commit fraud. [Doc. 10, Amended Complaint, paragraph 85. (emphasis added).]

[The FCRA] prohibits any "person" from <u>obtaining or using</u> a credit report on any consumer unless the person has a permissible purpose for procuring the report. 15 U.S.C. § 1681a(b) defines "person" to encompass any individual and, therefore, Defendant Vitti qualifies as a person under the FCRA. [Doc. 10, Amended Complaint, paragraph 86. (emphasis added).]

In an attempt to controvert the Amended Complaint, Defendant's Motion asserts that Plaintiffs have not pled that Mr. Vitti personally obtained and used a consumer report in violation of the FCRA. Reading the Defendant's Motion to Dismiss next to the Amended Complaint, it is impossible to reach any conclusion other than the Defendant is purposely ignoring Plaintiffs' allegations. See Doc. 15, p. 23 ("Plaintiffs, significantly, allege only that a defendant forged a credit report authorization form allowing Heartland Payroll Processing – <u>not Vitti</u> – to obtain and use the credit report") (emphasis added).

Defendant's assertion is plainly false, purposefully misleading, and ignores the Amended Complaint. These arguments are impossible to reconcile with the Defendant's (and his counsel's) obligations to this Court.[3] In any event, Plaintiffs' Amended

---

[3] As an aside, the Defendant's redundant fabrications from his Motion regarding the plain language of the Amended Complaint appear to potentially violate certain rules of conduct regarding statements to the tribunal.

Complaint alleges a violation of the FCRA's plain language by Mr. Vitti, in obtaining and using a consumer report under false pretenses and, in fact, to use that consumer report to perpetuate a massive fraud.

Interestingly, Defendant's Motion to Dismiss even concedes the Plaintiffs' position. Defendant at one point admits, "[the FCRA] applies only to credit reporting agencies and those who <u>request or use</u> credit reports." Doc. 15, p. 23 (emphasis added). The Amended Complaint clearly alleges that the Defendant Vitti personally <u>obtained</u> and <u>used</u> a consumer report for an impermissible purpose – to commit fraud. It is a violation of the FCRA to obtain or use a consumer report for an impermissible purpose. Plaintiffs' Amended Complaint is clear in its allegations: Defendant Vitti obtained and used a credit report under false pretenses and for an impermissible purpose in violation of the FCRA.

In the end, as with most identity thieves, Mr. Vitti's real grievance is not that the law does not apply to him; it is that he was caught violating the law. Eluding accountability, however, is not a basis for avoiding the requirements and prohibitions of the Fair Credit Reporting Act, which, incidentally, was designed by Congress, in part, to redress the exact kind of fraud that is alleged by Mr. Vitti in this case.

### F.     Plaintiffs' FCRA Claim Is Within The Statute Of Limitations

Defendant's final misplaced argument, made in one sentence, is that Plaintiffs' FCRA claim is outside of the statute of limitations. This assertion is based on the notion

---

Without any sense of irony, Defendant asserts <u>in the same Motion</u> (while breathlessly misstating facts and law), that the allegations of Plaintiffs' Amended Complaint somehow violate these same rules of professional conduct and further threatens a Rule 11 Motion based on the same. Doc. 15, p. 15, FN 3. In other words, Defendant accuses Plaintiffs of failing to adhere to certain ethical rules, while simultaneously demonstrating no fidelity to the same standards.

that the criminal identity theft and forgery alleged in the Amended Complaint *occurred* in February of 2012. This statute of limitations argument is spurious because Defendant's counsel has long been in possession of the attached affidavit from Plaintiff Shawn Nelson that clearly demonstrates that the *discovery* of the identity theft and forgery by Mr. Vitti (which allowed Mr. Vitti to obtain the consumer report under false pretenses) was not until May of 2012 and clearly within the two year period required under the FCRA. *See Exhibit 4, affidavit of Shawn Nelson.*

The statute of limitations for an FCRA claim is within two years of the "discovery by the plaintiff of the violation that is the basis for . . . liability[.]" 15 U.S.C. § 1681p. Mr. Vitti's conduct was not discovered until May of 2012 and, therefore, the FCRA clam asserted is clearly within this time period.

### Conclusion

In accordance with the arguments and authorities set forth above, Defendant's Motion to Dismiss should be denied in its entirety.

Respectfully Submitted,

/s/ *Peter J. Chung*
Peter J. Chung        #49081
BENTON LLOYD AND CHUNG LLP
208 W 19th St
Kansas City, Missouri  64108
816.588.6825
FAX: 866.216.3649
Attorney for Plaintiffs
peter@blcfirm.com

## CERTIFICATE OF SERVICE

I certify that on May 5, 2014, I caused the foregoing document to be filed with the Court via the Court's CM/ECF system, which will be sent via ECF to the following counsel of record for Defendant Vitti in this matter:

Richard Rhyne
Kathryn Gasper
Lathrop and Gage
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
(816) 292-2000 Phone
(816) 292-2001 Fax

ATTORNEY FOR DEFENDANT

*/s/ Peter J. Chung*_____
ATTORNEYS FOR PLAINTIFFS