# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

504 TAVERN LLC, et al., )
)
      Plaintiffs, )
)
v. )
) NO. 14-CV-00115-FJG
)
VITTI, et al., )
)
      Defendants. )
)
)

## ORDER

Currently pending before the Court is Defendant Philipp Vitti's Motion to Dismiss for Lack of Jurisdiction (Doc. # 3), Plaintiff 504 Tavern LLC's and Shawn Nelson's Motion to Stay Fed.R.Civ.P. 12(b)(6) Proceedings (Doc. # 8), Vitti's Motion to Dismiss for Lack of Jurisdiction (Doc. # 14), plaintiffs' Motion for Discovery on a Limited Basis (Doc. # 19), the parties' Joint Motion to Continue Fed.R.Civ.P. 26(f) Conference and Submit Discovery Plan (Doc. # 21), Vitti's Motion for Sanctions (Doc. # 22) and plaintiffs' Motion for Extension of Time to Complete Service of Process (Doc. # 34).

### I.    BACKGROUND

Shawn Nelson was the owner of a 504 Tavern LLC, located at 504 Westport Road, Kansas City, Missouri. Philipp Vitti was hired by plaintiffs to be the operations manager of 504 Tavern. On November 1, 2011, Vitti signed a management contract. This agreement required Vitti to attend to the daily operations, maintain compliance with the liquor laws and pay the bills for the Tavern. After approximately six weeks on the job,

the owners noticed that there were some serious problems with the business, such as a failure to document employees on a legitimate payroll account, failure to pay utility bills in a timely manner, failure to engage in proper accounting and failure to pay insurance premiums.  In mid-December, the owners met with Vitti to discuss the problems and to remind him of his obligations under the contract.  In early February 2012, Vitti took an unexplained and unauthorized absence from the business.  When Vitti failed to return after a month, the ownership of the Tavern decided to terminate his contract on February 28, 2012.  Plaintiffs allege that shortly after he was notified that he had been terminated, Vitti withdrew several thousands of dollars from the Tavern's bank account.  Plaintiffs allege that after Vitti was terminated, they discovered that he had not been paying the utility bills for the Tavern or making the necessary sales tax payments to the State.  Plaintiffs also allege that after Vitti left, they discovered that during February 2012, he had taken approximately $17,000 from 504 Tavern's bank account and used the money to fund a completely unrelated business located in Orlando, Florida, called "Liquid."  Plaintiffs also allege that while in Florida, Vitti stole and misappropriated the identity of 504 Tavern LLC and the members of 504 Tavern LLC in order to set up business accounts for "Liquid."  Plaintiffs allege that Vitti accomplished this by forging Shawn Nelson's signature numerous times in order to induce Heartland Payroll Processing Corporation to process transactions for the Florida business.  Plaintiffs have asserted claims against Vitti, Robert Sippio and BEPEC, LLC for breach of contract, conversion of funds, fraud, identity theft, negligence, breach of fiduciary duty, unjust enrichment, civil conspiracy RICO and the Fair Credit Reporting Act.

 Defendants have moved to dismiss the Amended Complaint on the ground that

there is no diversity jurisdiction and alternatively that there is no federal question jurisdiction.

## II.     STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice.  Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor.  Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

It should also be noted that Fed.R.Civ.P. 9(b)'s pleading requirements are also applicable in this case. In H & Q Properties, Inc. v. Doll, No. 8:13CV38, 2014 WL 2919139 (D.Neb. June 26, 2014), the Court stated, "[t]he particularity requirements of Rule 9(b) apply to allegations of  . . . fraud . . .when used as predicate acts for a RICO claim. . . .However, the particularity requirements of Rule 9(b) do not apply to allegations of the other elements of a RICO claim."  Id. at *4 (internal citations and quotations omitted).

## III.     DISCUSSION

### A.     Motions to Dismiss for Lack of Jurisdiction

Defendant Vitti states that the Court should dismiss this action because the parties are not completely diverse. Vitti states that he is a citizen of the same state as one of the plaintiffs. Additionally, Vitti argues that there is no federal question jurisdiction because plaintiffs have failed to state a claim for Civil Conspiracy RICO or the Fair Credit Reporting Act.

### 1.  Diversity Jurisdiction

#### A. Citizenship of Defendant Vitti.

Plaintiffs assert that all the defendants, including Vitti are Florida citizens. However, Vitti argues that he is a citizen of Missouri, and thus there is no diversity of citizenship, because 504 Tavern is a Missouri corporation. In Damon v. Groteboer, 937 F.Supp.2d 1048 (D.Minn. 2013), the Court stated

> There are two requirements to establish a domicile: (1) physical presence in a state; and (2) intent to remain there indefinitely. . . .Domicile is determined at the time the action is instituted. . . .[T]he Eighth Circuit held that [t]here are rebuttable presumptions [1] that the place where a person actually lives is his domicile and [2] that a domicile, once established, continues until a change is shown, so that the burden of proving a change of domicile rests on the party alleging it. . . .[t]he presumption is in favor of an original or former domicile as against an acquired one, and of a domestic as against a foreign one, and that [p]roof of a change of domicile must be clear and convincing.

Id. at 1065 (internal citations and quotations omitted). In Cooney v. Usher, No. 4:12-CV-38-JAR, 2012 WL 484697,*2 (E.D.Mo.Feb.14, 2012), the Court stated that in determining a party's citizenship these are some factors which courts consider: "the party's current residence, voter registration and voting practices, location of real estate

and personal property, location of brokerage and bank accounts, membership in unions, fraternal organizations, churches, clubs, and other associations, place of employment or business, driver's license and automobile registration, and payment of taxes." The Court noted that "[n]o single factor is conclusive." Id.

Defendant Vitti filed an affidavit in support of the Motion to Dismiss stating that his permanent residence is located in Kansas City, Missouri in a home owned by his mother. He states that nearly all of his personal property is located at that house, except for his clothing and computer. Vitti states that he is registered to vote in Missouri, the Missouri Department of Revenue sends all official mail to that address, he receives personal correspondence at the Missouri address and he has a bank account in Missouri. Plaintiff states that in 2012, he began working temporary jobs in the service industry, first in Florida and then in Connecticut. He states that while he has been living in Connecticut, he has not bought or leased real estate, registered to vote or established a primary care physician. Vitti states that although he currently lives in Connecticut, he does not consider this to be his home state and has no intention to remain in Connecticut after his employment there is finished. (Vitti Affid. Doc. 15, Ex. 2). Thus, defendants argue that plaintiffs have failed to meet their burden to show that Vitti is a citizen of the state of Florida.

Plaintiffs argue that Vitti is domiciled in Florida because Vitti's mother told the process server, Robert Vick, that her son was living in Florida and she did not have any contact information for him. (Robert Vick Affid. Doc. 18, Ex. 1). Plaintiffs assert that this statement illustrates an intention of Vitti to stay in Florida and not return to Missouri. Plaintiffs also argue that Vitti represented in court papers filed in Florida in February and

5

March 2012 that he had a Florida address and that he was the registered agent of a Florida company. Plaintiffs argue that the facts show that Vitti changed in domicile from Missouri to Florida in 2012. Plaintiffs also argue that at a minimum they should be allowed to conduct limited discovery in order to resolve the conflicting accounts regarding diversity jurisdiction that have been submitted to the Court.

The Court finds that plaintiffs, as the parties asserting jurisdiction, have failed to carry their burden to show that defendant Vitti is not domiciled in Missouri. In <u>Joyce v. Armstrong Teasdale LLP</u>, No. 4:08-CV-1390(CEJ), 2010 WL 3613942, *1 (E.D. Mo.Sept. 7, 2010), the Court noted that "[a] person's domicile persists until a new one is acquired. <u>Holmes v. Sopuch</u>, 639 F.2d 431,434 (8th Cir.1981). Transitory absence from the state does not diminish the person's domicile in that state unless it becomes his intention to indefinitely reside at that new location. <u>Id</u>." Vitti's affidavit establishes that although he has had temporary positions in both Florida and Connecticut, he had no intention to remain in either of these states and he considers Missouri to be his permanent domicile. Thus, because Vitti's domicile was originally Missouri and because he has only had transitory absences from the state and never evidenced an intent to acquire a new domicile, the Court finds that Vitti retained his Missouri domicile. Because plaintiff 504 Tavern, LLC is also a Missouri corporation, the Court finds that there is a lack of diversity between the parties.

Plaintiffs had sought leave to conduct limited discovery regarding these jurisdictional issues and depose Vitti, his mother and Robert Vick, the process server. However, the Court finds that there is no factual dispute regarding Vitti's residence or his intentions, thus the Court determines that this issue is capable of resolution without

conducting jurisdictional discovery.  Accordingly, the Court hereby **DENIES** plaintiffs' Motion for Leave to Conduct Limited Discovery Regarding Jurisdictional Issues (Doc. # 19). Having determined that there is no diversity jurisdiction the Court will proceed to analyze whether federal question jurisdiction exists.

**2. Federal Question Jurisdiction**

Defendants argue that the Court also lacks jurisdiction over this case because plaintiffs' Amended Complaint has failed to state either a RICO claim or a Fair Credit Reporting Act claim.  If these two federal claims are dismissed, defendants argue that the entire case should be dismissed as there will be no basis for federal court jurisdiction.

**A.     RICO Claim.**

Defendants state that plaintiff's RICO claim is entirely based on the allegation that "Defendants Vitti and Sippio misled Plaintiff 504 Tavern LLC's payroll processing company, Heartland [Payroll Processing], into a fraudulent contract for services (under Plaintiff 504 Tavern's business name and liability) through forging a multitude of signatures of a member of 504 Tavern LLC."  (Doc. 10, ¶ 78).  Defendants argue that plaintiffs have alleged only forgery or potentially fraud, but certainly not racketeering. "RICO 'does not cover all instances of wrongdoing.  Rather, it is a unique cause of action that is concerned with eradicating organized, long-term habitual criminal activity.'" Crest Const. II Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011)(quoting Gamboa v. Velez, 457 F.3d 703, 705 (7th Cir.2006)).  Defendants state that plaintiff's claim centers on allegations that Vitti and Sippio misled Tavern 504's payroll processing company, Heartland Payroll Processing, into a fraudulent contract for services through forging a

multitude of signatures.  Defendants argue that these allegations constitute garden variety forgery, or potentially fraud, but not racketeering.

**1.      Elements of RICO**.

"Section 1962 of the RICO Act makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." Crest Const. II, 660 F.3d at 353. In order to establish a violation of the statute, plaintiffs must show:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Id. (internal citations and quotations omitted).

**2.      Definition of Enterprise** – "(1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering."  United States v. Lee, 374 F.3d 637, 647 (8th Cir. 2004). "The enterprise must be more than just the pattern of racketeering activity.  In other words, the court 'must determine if the enterprise would still exist were the predicate acts removed from the equation.'"  Jennings v. Bonus Building Care, Inc., No.4:13-CV-663-W-DGK, 2014 WL 1806776, *7 (W.D.Mo. May 7, 2014) (quoting Crest Constr. II, 660 F.3d at 354-55).

Plaintiffs allege in ¶ 78 their Amended Complaint:

78. As alleged above, Defendants engaged in a multifaceted enterprise to purposefully defraud the Plaintiffs and the public as a whole. Specifically to Plaintiffs' RICO assertions, the following facts pertain:

**Existence of an Enterprise:**

> a. Defendant Philipp Vitti and Defendant Robert Sippio, in 2011 and 2012, conspired together to misappropriate the personal identity of a member of 504 Tavern LLC, Plaintiff Shawn Nelson (including Mr. Nelson's social security number, credit report, home address, phone number, and all other personal information) as well as business information of Plaintiff 504 Tavern LLC for the purpose of perpetrating a fraud on the Plaintiffs as well as an additional future fraud on the public.
>
> b. Defendants Vitti and Sippio purposefully misappropriated Mr. Nelson's personal information, and the business information of 504 Tavern LLC, in order to defraud the Plaintiffs by converting funds in Kansas City, Missouri, and, later, attempt to "legitimately" (through the Plaintiffs' stolen information) organize a business and/or criminal organization in another state for the purpose of orchestrating a criminal fraud on the public.
>
> c. As stated above, Defendants Vitti and Sippio, in concert, forged the signature of a member of 504 Tavern LLC (Shawn Nelson) multiple times in order to organize a business enterprise organized for the sole purpose of defrauding the public.

Defendants argue that plaintiffs have failed to allege that Vitti and Sippio had anything in common other than allegedly undertaking the acts of racketeering. Defendants thus argue that plaintiffs have failed to allege an enterprise because they have alleged no "ascertainable structure distinct from the conduct of a pattern of racketeering." <u>Lee</u>, 374 F.3d at 647. Plaintiffs argue that they have adequately alleged a RICO violation because they have alleged that the Florida enterprise was organized for the purpose of defrauding the public and was in fact used to defraud the public. Plaintiffs state that the Complaint alleges that the defendants jointly formulated and participated in a conspiracy to commit multiple acts of wire fraud.

The Court finds that plaintiffs have failed to show that the enterprise was distinct from the pattern of racketeering activity. The allegations above describe only that the defendants obtained plaintiff Shawn Nelson's personal information, forged his signature multiple times and then used this information to establish a business. However, this is

9

exactly what the plaintiffs have alleged constitute the pattern of racketeering activity. In ¶ 78 n, o, plaintiffs allege:

> **Pattern of Racketeering Activity and Future Criminal Conduct**
>
> n. As stated above, the Defendants defrauded the Plaintiffs (and the public) by misappropriating information through the interstate wires, for the purpose of setting up a criminal enterprise through the interstate wires, and then utilized the information pertaining to the Plaintiffs to perpetrate a fraud on the public by systematically overcharging innocent consumers through the interstate wires.
>
> o. Such fraud committed by the Defendants' enterprise would have continued in perpetuity against the Plaintiffs and the general public had Heartland's procedures related to credit card fraud not recognized the criminality taking place and contacted Mr. Nelson to inquire about why "his company" appeared to be systematically overcharging customers.

Because the plaintiffs have failed to plead facts showing that the entity was distinct from the alleged racketeering activity, the Court finds that plaintiffs have failed to sufficiently allege this element of the RICO claim.

**3.     Definition of a Pattern of Racketeering**.

In order to show a pattern of racketeering, plaintiffs must allege two predicate acts. The acts must be related and must amount to or pose a threat of continuing criminal activity. The two predicate acts must occur within a specified time frame. Additionally, where the plan is to defraud a single company, there is no RICO violation. Terry A. Lambert Plumbing v. Western Sec. Bank, 934 F.2d 976, 981 (8th Cir.1991). Defendants state that the only predicate act which plaintiffs vaguely allege is wire fraud. Defendants argue that plaintiffs' boilerplate allegations are insufficient. Additionally, a claim for civil conspiracy RICO is only permitted when the plaintiff suffers an injury from an act that is independently wrongful under RICO.

10

Plaintiffs allege that they pled multiple acts of wire fraud, violations of 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from unlawful activity); violations of 18 U.S.C. § 2314 (transportation of stolen monies) and violations of Mo.Rev.Stat. §§ 570.130 (fraudulent use of a credit device) and § 570.223 (forgery). Plaintiffs also allege that Vitti's conduct resulted in substantial financial harm to plaintiffs.

In their Amended Complaint, plaintiffs allege that the predicate acts committed were:

> **Predicate Acts Regarding RICO Activity**
>
> r. With regard to Plaintiffs' RICO allegations, Defendants engaged in predicate acts indictable under the following provisions of the United States Code and Missouri law.
>
> (1) Multiple acts of wire fraud as alleged above in violation of 18 U.S.C. §§ 1341 and 1343;
>
> (2) Acts in violation of 18 U.S.C. § 1957 as alleged above.
>
> (3) Acts in violation of 18 U.S.C. § 2314 as alleged above.
>
> (4) Acts in violation of the criminal provisions of RSMo. §§ 570.130 and 570.223 as alleged above.

(Plaintiff's Amended Complaint, ¶ 78(r)).

However, the only acts which were alleged in the preceding paragraphs include allegations that the defendants forged the signature of Shawn Nelson and other members of 504 Tavern multiple times (¶78 c, f) and used fax transmissions and email to transmit the forged signatures to Heartland Payroll Processing to set up fraudulent accounts to overcharge the credit cards of Florida residents (¶ 78 g). Plaintiffs also assert that this criminal fraud would have continued in perpetuity had Heartland not

recognized the fraudulent activity and contacted plaintiffs. However, what is lacking in these factual allegations is the sort of specificity which is demanded by Fed.R.Civ.P. 9(b).

> A party must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result to satisfy Rule 9(b)'s particularity requirements. . . . Put another way, the complaint must identify the who, what, where, when, and how of the alleged fraud.

H&Q Properties, Inc., 2014 WL 2919139 at *4 (internal citations and quotations omitted). In this case, plaintiffs have not alleged which defendants engaged in these actions, when the actions allegedly took place, and what was communicated through the email and fax transmissions. Rather, the Court finds that plaintiff's Amended Complaint contains merely boilerplate, conclusory allegations and does not contain the requisite specificity required by the Rule.

Additionally, the Court finds that plaintiffs have failed to show that the predicate acts were related and continuous. See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)("[T]o prove a pattern of racketeering activity a plaintiff . . .must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.") In Dewitt Insur. v. Horton, No. 4:13-CV-2585JAR, 2014 WL 2208073 (E.D.Mo. May 28, 2014), the plaintiff alleged that the defendant had engaged in the predicate acts of mail and wire fraud to set up a company and obtain excessive commissions from plaintiff. However, the Court did not find that the allegations met the continuity requirement. The Court stated, "[t]here is no allegation that Defendants' fraud or alleged racketeering

12

activity will continue as to Plaintiff or that Defendants' activities threatened or will threaten any other victim." Id. at *8. The Court continued:

> A single, fraudulent contractual business venture, which is narrowly tailored toward one victim does not constitute the pattern of racketeering required for criminal activity under a RICO claim. The Court finds that the alleged acts of everyday business emails and the monthly commission checks received by [defendants] are neither broad nor far reaching enough to constitute a pattern of racketeering under RICO. . . .Further, as noted by several circuit courts, this type of garden variety fraud does not state a claim under RICO simply because Defendants allegedly used the internet, interstate mail, and interstate wires to implement their fraud:
> Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its 'natural and common sense approach to RICO pattern element,' we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat.

Id. at *8.

Accordingly, the Court finds that plaintiffs have failed to assert a violation of the RICO statute, because they have failed to allege that the defendants conducted an enterprise through a pattern of racketeering activity. Additionally, the plaintiffs have failed to plead the RICO claim with sufficient specificity to meet the Rule 9(b) pleading standard and have failed to show that the alleged predicate acts were related and continuous. For these reasons the Court hereby **GRANTS** defendants' Motion to Dismiss Count VIII – Civil Conspiracy RICO Violation against all defendants.

B.     **Fair Credit Reporting Act Claim**

Defendants argue that plaintiffs allege only that Vitti forged a credit report authorization form allowing Heartland Payroll Processing, not Vitti, to obtain and use the

13

credit report. Defendants argue that even if plaintiffs' allegations are true, there is no basis under the FCRA for private causes of action against alleged forgers or identity thieves. Defendants also argue that the claim is barred by the statute of limitations because the claim was discovered more than two years before the Amended Complaint was filed.

Plaintiffs argue in opposition that Vitti assumed Nelson's identity for the purpose of obtaining and using Nelson's consumer/credit report without a permissible purpose and without Nelson's knowledge or consent. Plaintiffs state that the FCRA applies to those who request or use credit reports for an improper purpose. Plaintiffs state that they have alleged that Vitti personally obtained and used a consumer report for an impermissible purpose – to commit fraud. Plaintiffs also state that the claim is within the statute of limitations because the fraud was discovered in May 2012, which is within the two year statute of limitations, as the Amended Complaint was filed on April 4, 2014.

In <u>Nixon v. Enterprise Car Sales Co.</u>, No. 4:09CV1896HEA, 2011 WL 4857941 (E.D.Mo. Oct. 13, 2011), the Court stated:

> Under § 1681b(f), [a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section. In order to establish a violation of the FCRA for obtaining a credit report without a legitimate business need, plaintiff must prove that (1) there was a consumer report; (2) defendant used or obtained it; (3) defendant did so without a permissible statutory purpose; and (4) defendant was negligent or willful in so doing.

<u>Id</u>. at *3 (internal citations and quotations omitted). In the Amended Complaint, plaintiffs allege that:

> 84. Defendant Vitti assumed Plaintiff Nelson's identity for the purpose of *obtaining and using* Mr. Nelson's consumer/credit *report without a permissible purpose* and without Mr. Nelson's knowledge or consent.

14

> 85. Mr. Vitti, along with his co-Defendants, used Mr. *Nelson's unlawfully obtained credit report* to set up business accounts for a business that Mr. Nelson did not know existed and did not consent to participate in through the use of his credit information. Although the term "user" is undefined by the FCRA, Defendant Vitti clearly qualifies as a "user" of Mr. Nelson's credit report under the FCRA.
>
> 85. As alleged above, Defendant Vitti *willfully obtained and used Mr. Nelson's consumer/credit report without a permissible purpose* and with an intent to commit fraud.
>
> 86. 15 U.S.C. § 1681b(f) prohibits any "person" from obtaining or using a credit report on any consumer unless the person has a permissible purpose for procuring the report. 15 U.S.C. § 1681a(b) defines "person" to encompass any individual and, therefore, Defendant Vitti qualifies as a person under the FCRA.

(First Amended Complaint, Doc. # 10 (emphasis added).

In comparing the elements of a FCRA claim against the allegations contained in the First Amended Complaint, the Court finds that plaintiffs have sufficiently alleged the elements necessary to state a claim. Additionally, the Court finds that the claim is within the statute of limitations because the Affidavit of Shawn Nelson shows that he did not discover the fraud until May 2012 (Doc. # 18, Ex. 4). Therefore, because the Court finds that plaintiffs have sufficiently alleged a FCRA claim, the Court **DENIES** defendants' Motion to Dismiss this claim.

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Doc. # 14). The Court **DENIES** as **MOOT** defendants' initial Motion to Dismiss filed on March 14, 2014, as it was filed before plaintiffs' filed their Amended Complaint (Doc. # 3). The Court also **DENIES** as **MOOT** plaintiffs' Motion to Stay Rule 12(b)(6) Proceedings (Doc. # 8), as plaintiffs were requesting an extension of time to respond to the first Motion to Dismiss.

**C.     Motion for Sanctions**

Defendant Vitti moves the Court to impose sanctions on plaintiffs as well as plaintiff's counsel Peter Chung, for engaging in improper litigation strategy, manipulating the forum and increasing the cost of the litigation.  Defendants argue that the Court should sanction plaintiffs for asserting claims for RICO and FCRA without any evidentiary or legal basis and for incorrectly alleging that Vitti was a Florida citizen. In the Motion for Sanctions, defendants basically reiterate all of the arguments which were previously raised in the Motion to Dismiss.  Although the Court found that plaintiffs did not sufficiently allege a violation under RICO, the Court did find that plaintiffs had stated a claim for violation of the FCRA.  Additionally, the Court finds that the plaintiffs had a good faith basis for asserting that defendant Vitti's domicile was in Florida.  Even though the Court ultimately disagreed with plaintiffs on this point, the Court does not find that these assertions were made without a good faith basis.  Accordingly, the Court hereby **DENIES** defendants' Motion for Sanctions (Doc. # 22).

**D.     Motion for Extension of Time to Serve Process on Defendants Sippio and BEPEC**

Plaintiffs state that they attempted to serve defendants Sippio and BEPEC, but they have been unsuccessful.  Plaintiffs are requesting an additional sixty days in which to complete service upon these defendants.  Defendants have opposed the motion for an extension arguing that the plaintiffs have failed to show good cause for an extension of time.

Fed.R.Civ.P. 4(m) states, "[i]f a defendant is not served within 120 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be

made within a specified time. The plaintiffs filed their Motion for an extension of time before the expiration of the 120 day deadline and state that they have made efforts to accomplish service. Accordingly, the Court hereby **GRANTS** plaintiffs' Motion for an Extension of Time and directs that plaintiffs accomplish service on these defendants on or before **August 29, 2014**.

**E.     Joint Motion to Continue Rule 26(f) Conference and Submit Discovery Plan**

The Court had initially requested that the parties submit a joint proposed discovery plan and scheduling order no later than May 27, 2014.  In light of the pending motion to dismiss, the parties jointly requested an extension of that deadline.  Now that the Court has ruled on the Motion to Dismiss and granted plaintiffs an extension of time to serve process on defendants Sippio and BEPEC, the Court hereby **GRANTS** the parties Joint Motion to Continue the Rule 26(f) Conference.  The parties shall conduct their Rule 26(f) conference on or before **August 1, 2014** and shall submit their proposed scheduling and trial order on or before **August 15, 2014**.

### IV.     CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES AS MOOT** Philipp Vitti's Motion to Dismiss for Lack of Jurisdiction (Doc. # 3), **DENIES AS MOOT** plaintiffs' Motion to Stay Fed.R.Civ.P. 12(b)(6) Proceedings (Doc. # 8), **GRANTS IN PART** and **DENIES IN PART** Vitti's Motion to Dismiss for Lack of Jurisdiction (Doc. # 14), **DENIES** plaintiffs' Motion for Discovery on a Limited Basis (Doc. # 19), **GRANTS** the Joint Motion to Continue Fed.R.Civ.P. 26(f) Conference and Submit Discovery Plan

(Doc. # 21), **DENIES** Vitti's Motion for Sanctions (Doc. # 22) and **GRANTS** plaintiffs' Motion for Extension of Time to Complete Service of Process (Doc. # 34).


Date: July 15, 2014　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　United States District Judge