**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| 504 Tavern LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:14-cv-115 |
| | ) | |
| v. | ) | |
| | ) | |
| Vitti, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S SUGGESTIONS IN SUPPORT OF MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, MOTION TO STAY STATE LAW CLAIMS PENDING STATE COURT ACTION**


LATHROP & GAGE LLP

*/s/ Kate O'Hara Gasper*
Richard D. Rhyne (23692)
RRhyne@LathropGage.com
Kate O'Hara Gasper (61198)
kgasper@lathropgage.com
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: 816.292.2000
Telecopier: 816.292.2001

Attorneys for Defendant
Philipp Vitti

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

FACTUAL AND PROCEDURAL BACKGROUND .......... 2

I. The Court Does Not Have Supplemental Jurisdiction Over the State Law Claims Because They Do Not Share a Common Nucleus of Law or Fact with Plaintiff Shawn Nelson's FCRA Claim. .......... 4

II. The Court Should Use its Discretion to Decline Exercising Supplemental Jurisdiction. .......... 7

a. Plaintiffs' State Law Claims Substantially Predominate Nelson's FCRA Claim. .......... 8

b. The Parallel State Court Case Presents "Exceptional Circumstances" to Decline Supplemental Jurisdiction Under 28 U.S.C. § 1367(c)(4). .......... 10

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*504 Tavern LLC v. Vitti*,
14-CV-00115-FJG, 2014 WL 3487488 (W.D. Mo. July 15, 2014) .......... 5, 6

*Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*,
495 F.3d 1017 (8th Cir. 2007) .......... 9

*Burroughs v. Burroughs*,
CA 3:11-2133-JFA-PJG, 2011 WL 5024180 (D.S.C. Sept. 30, 2011) .......... 7

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997) .......... 10

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......... 2, 10, 12, 13

*Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*,
48 F.3d 294 (8th Cir. 1995) .......... 13

*Fru-Con Const. Corp. v. Controlled Air, Inc.*,
574 F.3d 527 (8th Cir. 2009) .......... 11

*Green v. Ameritrade, Inc.*,
279 F.3d 590 (8th Cir. 2002) .......... 8

*Lawrence & Associates, Inc. v. Amdocs Champaign, Inc.*,
405CV2306-SNL, 2007 WL 390732 (E.D. Mo. Jan. 31, 2007) .......... 9

*McDowell v. Waldron*,
920 S.W.2d 555 (Mo. Ct. App. 1996) .......... 6

*Morris v. Blue Sky Mgmt., LLC*,
11-00979-CV-DGK, 2012 WL 527936 (W.D. Mo. Feb. 16, 2012) .......... 9

*Mountain Pure, LLC v. Turner Holdings, LLC*,
439 F.3d 920 (8th Cir. 2006) .......... 13

*Nabholz Const. Corp. v. Beck*,
699 F. Supp. 2d 1101 (E.D. Mo. 2010) .......... 11

*Newport v. Gross*,
No. 09-0476-CV-W-DGK, 2011 WL 1136551 (W.D. Mo. Mar. 25, 2011) .......... 7

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp., Inc.*,
No. 00-0258-CV-W-2-FJG, 2008 WL 857758 (W.D. Mo. Mar. 31, 2008) .......... 9

*Sentinel Ins. Co. v. Haines*,
07-0690-CV-W-FJG, 2008 WL 695402 (W.D. Mo. Mar. 12, 2008) .......... 12

*TMTB I, LLC v. City of Manchester, Mo.*,
No. 4:07CV1037CDP, 2007 WL 3146562 (E.D. Mo. Oct. 25, 2007) .......... 3, 9

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966) .......... 7, 8

*Williams v. City of Marston*,
857 F. Supp. 2d 852 (E.D. Mo. 2012) .......... 8

**Statutes**

15 U.S.C. § 1681b(f) .......... 5

28 U.S.C. § 1367(c) .......... 1, 2, 8, 10, 14

**Other Authorities**

4247Avoiding Duplicative Litigation, 17A Fed. Prac. & Proc. Juris. § 4247 (3d ed.) .......... 13

Rule 12(b)(6) .......... 4

Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3567 (3d ed.) .......... 4

Defendant Philipp Vitti ("Vitti"), through his counsel, respectfully submits his Suggestions in Support of his Motion for Clarification or, in the Alternative, Motion to Stay State Law Claims Pending State Court Action. In support of his Motion, Vitti states and suggests as follows:

## INTRODUCTION

Vitti respectfully asks the Court to clarify its Order granting in part Vitti's Motion to Dismiss and specifically dismiss Counts I - VII of Plaintiffs' First Amended Complaint. The Order thoroughly explained that Plaintiffs failed to establish diversity jurisdiction, and likewise held they did not sufficiently plead a claim under RICO (Count VIII). Although the Court did not dismiss Plaintiff Shawn Nelson's Fair Credit Report Act ("FCRA") claim (Count IX), it was silent on whether it would exercise supplemental jurisdiction over Plaintiff 504 Tavern, LLC and Nelson's state law claims (Counts I – VII).

The FCRA claim is the only remaining count for which the Court has original jurisdiction. Notably, the FCRA claim is a distinct statutory action; the elements do not share a "common nucleus" of law or fact with the remaining state law claims. Vitti respectfully asks the Court to clarify the Order and dismiss these claims, without prejudice, for lack of subject matter jurisdiction.

Alternatively, even if there was a "common nucleus," the state law claims substantially predominate Nelson's FCRA claim. Therefore, supplemental jurisdiction over these claims is not appropriate and the Court may exercise its discretion to stay Counts I - VII under 28 U.S.C. § 1367(c)(2). Additionally, Plaintiffs asserted Counts I – VII (essentially *verbatim*) as counterclaims against the same parties in the parallel State Court Case. Indeed, there are additional parties in the State Court Case who are

intricately involved in Plaintiffs' allegations. An analysis under the *Colorado River* abstention doctrine demonstrates "exceptional circumstances" pertaining to judicial economy, meaning the court could also decline supplemental jurisdiction under §1367(c)(4). There are two sides to the story of these quarrelling parties. And this story, which is vastly predominated by state law claims, is better told in the State Court Case where all the parties may be heard. Vitti alternatively and respectfully moves the Court to stay these claims pending resolution in the parallel State Court Case.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. This case centers around a business dispute among the parties over the Westport bar, "Gusto," of which Vitti was an owner and Plaintiffs were the landlords.

2. Vitti was wrongfully forced out of the venture in February 2012 when he traveled to Florida to expand his business.

3. In November 2013, Vitti's counsel sent a demand letter to Plaintiffs that included a draft Jackson County petition, asserting his rights related to the Gusto business and Plaintiffs' improper conduct. *See* **Exhibit A,** at ¶¶ 4-5. Affidavit of Richard Rhyne, Submitted in Opposition to Motion to Dismiss/Stay State Court Case.

4. In response to Vitti's demand letter and draft petition, Plaintiffs requested a meeting to discuss a potential resolution. *Id.* at ¶ 6.

5. The parties met on January 22, 2014, wherein Plaintiffs requested an agreement to toll any statute of limitations pending such discussions. *Id.* at ¶¶ 7-8.

6. While Vitti's counsel was arranging the tolling agreement with the other parties, Plaintiffs filed the instant lawsuit in Federal Court on February 6, 2014. *Id.* at ¶¶ 9-11.

7. On February 26, 2014, Vitti filed a substantially similar version of the draft Jackson County petition, initiating *Vitti v. 504 Tavern, LLC, et al.*, Jackson County Case No. 1416-cv-04955 ("State Court Case"). *Id.* at ¶ 5; *see also* **Exhibit B,** State Court Case Docket Sheet.

8. On April 17, 2014, both of the Plaintiffs in this case (504 Tavern, LLC and Shawn Nelson) filed a Motion in the State Court Case to stay or dismiss Vitti's claims, claiming "[b]oth cases require both courts to evaluate the same evidence and draw legal conclusions on the same facts between quarrelling parties that are in privity with each other on the same transactions." *See* **Exhibit C**, Motion to Dismiss, p. 12.

9. On May 20, 2014, Judge Dale Youngs denied Plaintiffs' Motion to Dismiss or Stay the State Court Case, perhaps because the State Court Case has four additional party defendants who are not named in the Federal case. *See* **Exhibit D**, Order Denying Motion to Stay.

10. Plaintiffs then amended their Answer in the State Court Case and asserted Counts I - IX as counterclaims in the State Court Case; they also added BEPEC, LLC and Robert Sippio, Jr. (the unserved defendants in this Federal case) as third-party defendants. *See* **Exhibit E**, Counterclaims and Third Party Claims of Defendants 504 Tavern, LLC 504 Westport, LLC, Donald Saxton, David Saxton, and Shawn Nelson.

11. A comparison between Plaintiffs' Amended Complaint and State Court Case Counterclaims demonstrates that the allegations and claims are virtually identical. *Compare* Exhibit E *with* Doc. 10.

12. On July 15, 2014, this Court granted in part and denied in part Vitti's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim. *See* Doc. 39.

13. The Court held that Plaintiffs failed to meet their burden to establish that Vitti was not a Missouri resident and, therefore, there was no basis for diversity jurisdiction for Plaintiffs' state law claims, Counts I - VII. *Id.* at p. 7.

14. The Court also held that Plaintiffs failed to state a claim for relief under RICO, Count VIII. *Id.* at p. 13.

15. However, the Court denied Vitti's request to dismiss the Fair Credit Reporting Act ("FCRA") claim under Rule 12(b)(6). *Id.* at p. 14.

16. The FCRA claim, Count IX, is the only claim for which the Court has original jurisdiction and it is a consumer protection claim asserted solely on behalf of Plaintiff Shawn Nelson. *See* Doc. 10.

17. At this juncture, the State Court Case is at a similar stage as the Federal Case; 504 Tavern, LLC and Nelson are still attempting to serve third-party defendants BEPEC, LLC and Sippio. *See* Exhibit B, Docket Sheet for Case No. 1416-CV04955.

## I. The Court Does Not Have Supplemental Jurisdiction Over the State Law Claims Because They Do Not Share a Common Nucleus of Law or Fact with Plaintiff Shawn Nelson's FCRA Claim.

Supplemental jurisdiction can be justified only if the supplemental claim is "so closely related to the jurisdiction-invoking claim that they are part of the same constitutional 'case' or 'controversy.'" Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3567 (3d ed.). Courts often conclude that claims constitute part of the same case or controversy if they share a "common nucleus of operative fact." *Id.* Plaintiff Shawn Nelson, in response to Vitti's first Motion to Dismiss, bootstrapped a Missouri identity

theft claim into a jurisdiction-invoking FCRA claim. However, the statutory elements of a FCRA claim are unique and do not share a common set of facts or law with Plaintiffs' identify theft, fraud, or other state law claims.

Nelson alleges that "Vitti, along with his co-Defendants, used Mr. Nelson's unlawfully obtained credit report to set up business accounts for a business that Mr. Nelson did not know existed and did not consent to participate in through the use of his credit information." Doc. 10, ¶ 85. Specifically, the Amended Complaint alleges that Vitti "in concert with or on behalf of all Defendants," forged a "consumer/credit report authorization" . . . "to induce 504 Tavern's payroll processing company (Heartland Payroll Processing, Corp.) to process transactions for the Florida business." *Id.* at ¶ 28(m); (p)(3).

To prevail on his FCRA claim, under 15 U.S.C. § 1681b(f), Nelson must prove that "(1) there was a consumer report; (2) defendant used or obtained it; (3) defendant did so without a permissible statutory purpose; and (4) defendant was negligent or willful in so doing." *504 Tavern LLC v. Vitti*, 14-CV-00115-FJG, 2014 WL 3487488 (W.D. Mo. July 15, 2014); § 1681b(f); ("A person shall not use or obtain a consumer report for any purpose unless--(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.") All of these elements are described in the statute with great complexity— each of the definitions is several paragraphs long. The definitions of "consumer report" and "permissible purpose" are particularly involved. *See* §§ 1681a(d); 1681b(a).

Plaintiffs alleged that Vitti personally obtained and used a consumer report for an impermissible purpose—"to commit fraud." *504 Tavern LLC*, 2014 WL 3487488, at *8 (W.D. Mo. July 15, 2014). However, the terms " consumer report" and "permissible purpose" are statutorily prescribed in a manner that does not overlap with Nelson's allegations of fraud or identity theft. Meaning, assuming *arguendo* that Nelson proved that Vitti forged the credit report authorization or "used" Nelson's credit report to commit fraud, that would not support a finding that Vitti used a consumer credit report without a permissible statutory purpose in violation of the FCRA.

As a preliminary matter, Nelson must show the consumer credit report was obtained for consumer purposes, rather than a business purpose. *See McDowell v. Waldron*, 920 S.W.2d 555, 560 (Mo. Ct. App. 1996) (credit report collected for verification of parties' ability to convey clear title to house in course of their business was collected for non-consumer purpose and therefore was not "consumer report" covered by FCRA). The allegations in the First Amended Complaint, which claim that Vitti used the credit report to set up business accounts, suggest that Nelson cannot prove this element.

In determining the "permissible purpose" of the consumer report, the inquiry is whether the "credit reporting agency . . . has reason to believe" that a person requesting the report meets certain criteria specified by § 1681(b)(a)(3). The focus of the definition is on the credit reporting agency's reasonable belief that the consumer report will be used for a legitimate purpose. *Id.* The inquiry of "permissible purpose" is not, therefore, focused on the actual purpose used, but rather whether certain circumstances make it reasonable for the credit reporting agency to release the report. Plaintiffs' fraud and

identity theft allegations, which supposedly occurred after the release, are immaterial to this inquiry.

This disconnect is not surprising. The FCRA is targeted toward regulation of credit reporting agencies; it does not create a private right of action against alleged identity thieves who forge credit report authorizations. Indeed, no "federal statute [] provides victims a private right of action in civil court against an identity thief." *Burroughs v. Burroughs*, CA 3:11-2133-JFA-PJG, 2011 WL 5024180 (D.S.C. Sept. 30, 2011). In *Burroughs*, the court noted that although the FCRA "regulate[s] certain consumer credit agencies and institutions and/or the federal government itself in areas that touch on consumer identity protections," it does not "**provide[] for a private civil action in favor of an identity-theft victim against individual perpetrators**." *Id.* (emphasis added). Simply put, Nelson's FCRA claim is a square peg that won't fit with the rest of Plaintiffs' state law claims. It does not share a common nucleus of fact or law and there is no reason to try it along with Plaintiffs' state law claims, Counts I - VII. *See e.g.*, *Newport v. Gross*, No. 09-0476-CV-W-DGK, 2011 WL 1136551 (W.D. Mo. Mar. 25, 2011) (dismissing state law claim for lack of jurisdiction because it did not arise from the same case or controversy).

## II. The Court Should Use its Discretion to Decline Exercising Supplemental Jurisdiction.

Even if supplemental jurisdiction existed, the Court should use its discretion to decline jurisdiction over Plaintiffs' state law claims. Supplemental jurisdiction, formerly known as pendent jurisdiction, is "a doctrine of discretion, not of a party's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Its justification lies in "considerations

of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Id.*

The court may decline supplemental jurisdiction over claims when: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c); *Williams v. City of Marston*, 857 F. Supp. 2d 852, 861 (E.D. Mo. 2012). District courts have "broad discretion" in deciding whether to exercise supplemental jurisdiction over state law claims. *Green v. Ameritrade, Inc.,* 279 F.3d 590, 599 (8th Cir. 2002). Here, §§ 1367(c)(2) and 1367(c)(4) are particularly applicable.

**a. Plaintiffs' State Law Claims Substantially Predominate Nelson's FCRA Claim.**

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966). In such cases, it is fair to conclude that the state claim "constitutes the real body of the case, to which the federal claim is only an appendage." *Id.* The "substantially predominates" language in § 1367(c)(2) is drawn from the Supreme Court's opinion in *Gibbs*, and a district court's analysis under § 1367(c)(2) should follow

the Court's reasoning in that case. *TMTB I, LLC v. City of Manchester, Mo.*, No. 4:07CV1037CDP, 2007 WL 3146562 (E.D. Mo. Oct. 25, 2007).

The statutory elements of Nelson's FCRA claim, which are defined with great complexity, are distinct. These elements would be overshadowed by Plaintiffs' numerous other accusations regarding Vitti's prior management of the Gusto bar, as well the accusation that he acted without authority when he expanded the business in Florida. Namely, Plaintiffs allege that he breached a management contract (Count I), converted company funds (Count II), fraudulently induced them into the management agreement and committed forgery (Count III), committed identity theft (Count IV), negligently managed the bar (Count V), breached a fiduciary duty to manage the bar well (Count VI), and that he was somehow unjustly enriched (Count VII). None of these claims are related to the statutory elements Nelson must prove to succeed on his FCRA claim.

The Court should decline supplemental jurisdiction because inclusion of the state law claims would materially increase the amount of proof required in this matter. *See e.g.*, *Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp., Inc.*, No. 00-0258-CV-W-2-FJG, 2008 WL 857758 (W.D. Mo. Mar. 31, 2008) (finding that set-off claims substantially predominated and would "materially increase the amount of proof required to resolve this case"); *Morris v. Blue Sky Mgmt., LLC*, 11-00979-CV-DGK, 2012 WL 527936 (W.D. Mo. Feb. 16, 2012) (holding that FLSA and state law employment claims did not share a common nucleus with state law claims); *Lawrence & Associates, Inc. v. Amdocs Champaign, Inc.*, 405CV2306-SNL, 2007 WL 390732 (E.D. Mo. Jan. 31, 2007) ("The counterclaims involve the same parties but different operative facts and different legal issues."); *Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*,

495 F.3d 1017, 1024 (8th Cir. 2007) (noting that supplemental jurisdiction would not exist because the claims did not "derive from a common nucleus of operative fact"). In this case, the dispute is predominately a state law matter in every sense of the term.

**b. The Parallel State Court Case Presents "Exceptional Circumstances" to Decline Supplemental Jurisdiction Under 28 U.S.C. § 1367(c)(4).**

A *Colorado River* abstention is a "federal court's decision to abstain while relevant and parallel state-court proceedings are underway." 9 Black's Law Dictionary (8th ed.); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Unlike the discretionary analysis in determining whether to exercise supplemental jurisdiction under § 1367(a), the *Colorado River* abstention doctrine is applicable even if the Court had original or diversity jurisdiction over the claims. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 174 (1997)("[Abstention] doctrines embody the general notion that 'federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration.'").

Here, although the *Colorado River* doctrine requires a higher standard for the Court to reject jurisdiction, an analysis of these factors nonetheless demonstrates that the Court should decline supplemental jurisdiction under § 1367(c)(4). Indeed, the parallel State Court Case presents "exceptional circumstances" because there are additional parties in the State Court Case who are intricately involved in Plaintiffs' allegations for Counts I – VII. *See* 28 U.S.C.A. § 1367(c)(4) ("The district courts may decline to

exercise supplemental jurisdiction over a claim . . . in exceptional circumstances, there are other compelling reasons for declining jurisdiction.”).

A district court determines as a threshold matter whether there are pending parallel state and federal proceedings. *Nabholz Const. Corp. v. Beck*, 699 F. Supp. 2d 1101, 1105 (E.D. Mo. 2010). A parallel proceeding exists if there is a “substantial similarity” between the state and federal proceedings, which occurs when there are similar parties and “a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.” *Id.* (citation omitted).

There can be no dispute regarding the existence of a parallel action—**Plaintiffs have asserted identical claims against identical parties in the State Court Case**. Indeed, when Judge Dale Youngs denied Plaintiffs’ Motion to Stay, Plaintiffs asserted counterclaims and added third-party defendants BEPEC, LLC and Robert Sippio, Jr.. The substance of these counterclaims are the same as Counts I - VII in Plaintiffs’ First Amended Complaint, nearly *verbatim*. That threshold issue is satisfied.

Next, six non-exhaustive factors are addressed to determine whether exceptional circumstances warrant abstention. These six factors are:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009).

The first factor involves *res* and is not applicable here. The second factor is likewise immaterial because the federal forum is not inconvenient. In this case, the third

factor (whether maintaining separate actions may result in piecemeal litigation), is the "predominant factor" and weighs in favor of declining supplemental jurisdiction. *See Sentinel Ins. Co. v. Haines*, 07-0690-CV-W-FJG, 2008 WL 695402 (W.D. Mo. Mar. 12, 2008). The policies underlying *Colorado River* abstention are "considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (citing *Colorado River*, 424 U.S. at 817). The issue of staying the State Court Case has already been decided; that case will go forward. If a stay is not granted at this point, the parties must litigate the exact same claims against the exact same parties in two separate courts. This result does not promote "wise judicial administration," or "conservation of judicial resources."

Declining supplemental jurisdiction would also promote the "comprehensive disposition of litigation" because there are necessary parties present in the State Court Case who are not party to the Federal Case. Vitti sued defendant Sergio Acosta in the State Court Case, and it is Acosta whom Vitti believes may be responsible for forging Nelson's signature on the documents identified in Plaintiffs' First Amended Complaint. In 2012, while in Florida, Vitti gave Acosta certain documents and requested that Acosta present them to Nelson in Kansas City for Nelson's signature. Acosta returned to Florida from Kansas City with the signed documents. He represented to Vitti that Nelson signed them. Plaintiffs' First Amended Complaint (and their State Court Case Counterclaims) now allege that these documents were forged. Vitti specifically denies that he forged them. In any event, these claims are better heard in the State Court Case where all the relevant parties are before the court's jurisdiction. The maintenance of separate actions for Plaintiffs' state law claims and the same parties would result in unnecessary

duplicative litigation. Moreover, as described above, Nelson's FCRA claim does not share a common nucleus of fact and law and, therefore, it is easily severable.

The fourth factor, priority, also weighs in favor of declining supplemental jurisdiction. Both cases were filed within weeks of each other and neither has progressed beyond initial scheduling orders. Moreover, Plaintiffs engaged in trickery to be "first filed" which, even if done honestly, does not defeat the *Colorado River* abstention doctrine. *See Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 927 (8th Cir. 2006). The fifth factor supports declining supplemental jurisdiction, as well, because state law certainly controls Plaintiffs' state law claims and the FCRA claim may appropriately be heard in Federal Court. The sixth factor is irrelevant because Vitti does not ask the Court to stay Nelson's FCRA claim—his rights under Federal law will not be at issue in the State Court Case.

Finally, the Court should not overlook that Plaintiffs initiated this action in Federal court for a "vexatious, reactive [and] tactical reason." *See Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*, 48 F.3d 294, 299 (8th Cir. 1995) (citing Wright & Miller). Plaintiffs filed this suit first in Federal court only because they deceived Vitti into waiting to file in Jackson County. Plaintiffs, who had received Vitti's draft Jackson County petition, claimed they were interested in settlement discussions and requested a tolling agreement for the statute of limitations. Plaintiffs then ran to Federal court while Vitti was arranging the tolling agreement. This "forum shopping" may be considered as one among numerous factors relevant in deciding whether to defer under *Colorado River*. *See* § 4247Avoiding Duplicative Litigation, 17A Fed. Prac. & Proc.

Juris. § 4247 (3d ed.). There are numerous reasons for the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, defendant Philipp Vitti respectfully asks the Court to clarify its Order to dismiss Counts I - VII, without prejudice, for lack of subject matter jurisdiction. Alternatively, under 28 U.S.C. § 1367(c), Vitti moves the Court to decline supplemental jurisdiction over Counts I – VII and stay or dismiss these claims pending resolution in the parallel and pending State Court Case.

LATHROP & GAGE LLP

By: *_/s/ Kate O'Hara Gasper_*

Richard D. Rhyne (23692)
RRhyne@LathropGage.com
Kate O'Hara Gasper (61198)
kgasper@lathropgage.com
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: 816.292.2000
Telecopier: 816.292.2001

Attorneys for Defendant
Philipp Vitti

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 12th day of August, 2014, a true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*_/s/ Kate O'Hara Gasper_*
An attorney for Philipp Vitti